[No. 9842-7-III.   Division Three.   May 28, 1989.]

*In the Matter of the Personal Restraint of*
JULIO MOTA, *Petitioner.*

*Julio Mota,* pro se.

*Kenneth O. Eikenberry, Attorney General,* and *William L. Williams, Senior Assistant,* for respondent.

THOMPSON, C.J.—In this personal restraint petition, Julio Mota challenges the Department of Corrections' failure to give him good–time credit for the 67 days he spent in the county jail prior to sentencing on first degree kidnapping and first degree robbery counts. We hold that for persons sentenced under the Sentencing Reform Act of 1981 (SRA), the equal protection clause requires that the Department make available good–time credit for presentence incarceration as well as for time served after imposition of sentence. Therefore, we grant Mr. Mota's petition and remand the matter to the Department for recalculation of his release date.

The SRA provides:

> No person serving a sentence imposed pursuant to this chapter shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:
>
> (1) . . . the terms of the sentence may be reduced by earned early release time in accordance with procedures developed and promulgated by the department. . . . *In no case shall the aggregate earned early release time exceed one–third of the sentence.*

(Italics ours.) RCW 9.94A.150. The statute does not differentiate between time served in a state institution and time served in a county jail.

Nevertheless, the Department, in administering the granting of earned early release time, has chosen to limit such time to "offender[s] committed to any of the facilities within the Department . . ., a jail under contract to the

Department . . .,[1] or an out–of–state facility under inter-
state agreement with the . . . Department . . ." See Policy
Directive 350.100, reprinted at page V–61 of appendix V of
D. Boerner, *Sentencing in Washington* (1985). The
Department's position here is that Mr. Mota is not entitled
to good–time credit for that portion of his sentence served
in the county jail unless the sentencing court orders good–
time credit. It relies on *State v. Phelan*, 100 Wn.2d 508, 671
P.2d 1212 (1983), which we find inapplicable to SRA sen-
tencings.

In *Phelan*, the court held that the Board of Prison Terms
and Paroles, in setting a discretionary minimum term for a
pre–SRA conviction, did not need to give a defendant
good–time credit for jail time which he had served. It rea-
soned:

> "Good time" credit . . . is focused . . . on the particu-
> lar goal of rehabilitation. *See McGinnis v. Royster*, [410
> U.S. 263, 271, 35 L. Ed. 2d 282, 93 S. Ct. 1055 (1973)].
> *The different rehabilitative effects of jails and prisons
> therefore justify a denial of "good time" credit* where
> they do not justify a complete denial of "straight time"
> credit. *See McGinnis*, at 271–73.

(Italics ours.) *Phelan*, at 514–15.

In *McGinnis v. Royter*, 410 U.S. 263, 35 L. Ed. 2d 282, 93
S. Ct. 1055 (1973), prisoners challenged the New York cor-
rections law as violative of equal protection because it
denied them good–time credit toward parole eligibility for
the period of their presentence county jail incarceration.
Those released on bail prior to sentencing received full
allowance of good–time credit for the entire period of their
prison confinement. The Court found "significant differ-
ences" between the jail time and the prison confinement
that "afford[ed] the basis for a different treatment within a

---

[1]Under RCW 72.68.040:

"The secretary may contract with the authorities . . . of any county or city in
this state providing for the detention in an institution or jail operated by such
governmental unit, of prisoners convicted of a felony . . . and sentenced to a term
of imprisonment therefor in a state correctional institution for convicted felons
under the jurisdiction of the department."

constitutional framework." *McGinnis,* 410 U.S. at 271. Specifically, the state prisons had rehabilitation as a prime purpose and the facilities at those institutions were built and equipped to serve that purpose. County jails, on the other hand, served primarily as detention centers.

Unlike the sentencing schemes at issue in *Phelan* and *McGinnis,* the paramount purpose of the SRA is punishment, not rehabilitation. *State v. Rice,* 98 Wn.2d 384, 393, 655 P.2d 1145 (1982). The Legislature chose to continue good–time credit under the SRA for utilitarian reasons.

> While the continuation of this concept is theoretically inconsistent with the shift from an indeterminate to a determinate sentencing system, a good time system is widely believed to be necessary *to maintain discipline* within penal institutions. The retention of good time is another example of the pragmatic nature of the Sentencing Reform Act. Where it was believed necessary to the successful functioning of the sanctioning process, the Legislature deviated from what would have been required by a philosophically pure approach in favor of a practical solution. The frankly utilitarian nature of "earned early release time" is clear from the articulation of the reasons for its retention. "The department [of corrections] shall adopt a system providing incentives for good conduct and disincentives for poor conduct. . . . Earned early release days shall be recommended by the department as a form of tangible reward for accomplishment." [RCW 72.09-.130.]

(Footnotes omitted. Italics ours.) D. Boerner § 10.11, at 10–9.

The equal protection clause requires that "persons similarly situated *with respect to the legitimate purpose of the law* receive like treatment." (Italics ours.) *Harmon v. McNutt,* 91 Wn.2d 126, 130, 587 P.2d 537 (1978). Since the purpose of good–time credit is to encourage good behavior by prisoners while they are confined, the place of their confinement becomes irrelevant. The purpose is served whether the confinement is in a county jail or in a state institution.

The only reason of which we are aware for treating jail time differently than prison time is that the Department of Corrections presently does not have in place a procedure by which it can ascertain whether the prisoner in fact demonstrated good conduct while in the county jail. The only statutory limit on good time is that it not exceed one–third of the sentence. RCW 9.94A.150. To impose a further limitation based on that portion of the sentence served in the state institution denies equal protection to those who cannot obtain presentence release. The test is whether the method of figuring good time only on the time actually served in the state institution "may fairly be viewed as furthering a substantial interest of the State." *Plyler v. Doe,* 457 U.S. 202, 217–18, 72 L. Ed. 2d 786, 102 S. Ct. 2382, *reh'g denied,* 458 U.S. 1131, 73 L. Ed. 2d 1401, 103 S. Ct. 14 (1982). Administrative inconvenience in determining whether the prisoner has served presentence time reflecting good or poor conduct is not a substantial state interest under the SRA. Thus, we hold that the Department of Corrections violates the equal protection clause when it does not compute good time on the total sentence imposed or make available good–time credit for presentence time served in the county jail.

Mr. Mota's petition is remanded to the Department for reconsideration of his good–time credit in light of the holding of this opinion.

GREEN and SHIELDS, JJ., concur.

Reconsideration denied June 16, 1989.