[Nos. 56284-9, 56347-1. En Banc. March 29, 1990.]

*In the Matter of the Personal Restraint of*
JULIO MOTA, *Petitioner.*

JULIO MOTA, *Respondent,* v. THE STATE
OF WASHINGTON, *Petitioner.*

THE STATE OF WASHINGTON, *Appellant,* v. ROBERT
L. BAKER, *Respondent.*

*Kenneth O. Eikenberry, Attorney General, William L. Williams, Senior Assistant,* and *John M. Jones, Assistant,* for petitioner State.

*C. Danny Clem, Prosecuting Attorney,* and *Irene K. Cleavenger* and *Irene Asai, Deputies,* for appellant.

*Eric J. Nielsen* of *Washington Appellate Defender Association,* for Mota.

*Richard L. Peterson* and *Crawford, McGilliard, Peterson & Yelish,* for respondent Baker.

UTTER, J.—These two cases were consolidated for purposes of the appeal and are decided together. Julio Mota and Robert Baker contend they are entitled to "good–time" credit under the Sentencing Reform Act of 1981, RCW 9.94A.150, for time spent in county jail prior to sentencing. The State has appealed from decisions in favor of Mota and Baker.

We hold that the equal protection clause of the fourteenth amendment to the United States Constitution requires that indigent prisoners who cannot make bail prior to trial and sentencing are entitled to receive good–time credit for the period spent in county jail awaiting sentencing.

Julio Mota was convicted of first degree robbery and kidnapping in Yakima County. The sentencing court sentenced Mota to 53 months for count 1 and 75 months for count 2, pursuant to the sentencing reform act, RCW 9.94A. The terms ran concurrently for a total of 75 months. Mota was credited with 67 days of pretrial detention.

Mota filed a personal restraint petition in the Court of Appeals on February 17, 1989. He sought credit against his sentence for 22 days of good–conduct time for the time spent in jail awaiting trial and sentencing.

On April 26, 1989, the Chief Judge of the Court of Appeals, Division Three, entered an order granting Mota's personal restraint petition. The Chief Judge ruled that Mota's total sentence should be reduced by the maximum earned early release time of one–third, and the pretrial incarceration credit then be given against the sentence as reduced. This would give Mota good–time credit for pretrial incarceration. The Chief Judge remanded the matter to the Department of Corrections (DOC) for implementation of the new calculation.

The DOC moved for reconsideration. The DOC pointed out that *State v. Phelan*, 100 Wn.2d 508, 671 P.2d 1212 (1983), held that the failure to award good–time credit for pretrial confinement does not violate equal protection. Also, under RAP 16.11(b), the Chief Judge only has authority to dismiss frivolous petitions.

The Chief Judge rescinded the prior order, and referred the petition to a panel of the court for determination without oral argument. The Court of Appeals held that the DOC violated Mota's right to equal protection by failing to give good–time credit for presentence time served in county jail. *In re Mota*, 54 Wn. App. 252, 773 P.2d 129 (1989).

The DOC moved for reconsideration of the Court of Appeals decision, which was denied. The DOC petitioned the Supreme Court for discretionary review. The Supreme Court Commissioner granted discretionary review, transferred the case to this court and consolidated it with State v. Baker on July 31, 1989.

The DOC moved this court to stay the effect of *In re Mota, supra,* pending final decision of the case. The Supreme Court Clerk granted this motion on August 9, 1989.

Baker pleaded guilty to two counts of indecent liberties without forcible compulsion in Kitsap County Superior Court. Baker was sentenced to 34 months. The trial court gave Baker credit for 53 days' confinement before sentencing. Baker moved for an order for good–time credit against the 53 days served in Kitsap County Jail before being sentenced to the DOC. The trial court granted 7 days' good–time credit.

The State appealed to the Court of Appeals, Division Two. The Commissioner transferred the case to this court and consolidated it with In re Mota.

Mota contends that the Legislature intended RCW 9.94A.150 (prior to 1989 amendment) to apply to the time an inmate serves in county jail prior to trial and formal sentencing as well as to the time spent in prison. He also contends that the equal protection and due process clauses of the federal and state constitutions are violated by the failure of the DOC to award good–time credit to an inmate for time served in county jail prior to formal sentencing. For the reasons stated below, we hold that the Legislature did not so intend, but the equal protection clause of the fourteenth amendment to the United States Constitution is violated by the DOC's failure to award indigent defendants good–time credit for time served in the county jail prior to sentencing due to their inability to make bail. Because we grant the relief requested on this ground, we do not reach the due process issue presented by Mota.

In Baker's case, the State claims that the trial court did not have authority to grant 7 days' good–time credit for time served in the county jail prior to being sentenced to confinement in the DOC. We agree that the trial court is without this authority and that the authority is vested in the DOC.

I

In 1981, the Legislature passed the Sentencing Reform Act of 1981 (SRA). RCW 9.94A.150 provides for the reduction of an offender's sentence for good behavior. The version of that provision at issue here states in relevant part:

No person serving a sentence imposed pursuant to this chapter shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:

(1) . . . the terms of the sentence may be reduced by earned early release time in accordance with procedures developed and promulgated by the department. The earned early release time shall be for good behavior and good performance, as determined by the department. In no case shall the aggregate earned early release time exceed one–third of the sentence. . . .

Under this provision, each offender's sentence is reduced by one–third for good time. Time is added back on to the sentence if an offender violates DOC rules. The one–third is computed from the sentence remaining after any pretrial incarceration time that the offender has is subtracted. The one–third good–time credit, then, amounts to a greater number of days for offenders with no pretrial incarceration time. The result is offenders who could not obtain pretrial release do not get as much good time as offenders with identical sentences who could obtain pretrial release, and, thus, serve longer periods in the DOC.

The Legislature amended this provision in April of 1989. It now reads in relevant part:

No person serving a sentence imposed pursuant to this chapter shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:

(1) . . . the terms of the sentence of an offender committed to a county jail facility, or a correctional facility operated by the department, may be reduced by earned early release time in accordance with procedures that shall be developed and promulgated by the correctional facility in which the offender is confined. The earned early release time shall be for good behavior and good performance, as determined by the correctional facility. Any program established pursuant to this section shall allow an offender to earn early release credits for presentence incarceration. If an offender is transferred from a

county jail to the department of corrections, the county jail facility shall certify to the department the amount of time spent in custody at the facility and the amount of earned early release time. In no case shall the aggregate earned early release time exceed one–third of the total sentence. . . .

Laws of 1989, ch. 248 § 2; RCW 9.94A.150. (The underlined portions indicate the changes in statutory language.)

The statute now requires that all inmates sentenced for crimes committed after July 1, 1989, receive good–time credit for time served in presentence detention. Accordingly, our decision is confined in application only to those offenders sentenced under the SRA prior to the effective date of the amendment.

## II

▮▮ Mota argues that the 1989 amendment should be deemed remedial and retroactive, leading to the result that the Legislature intended all along that inmates receive good–time credit for time served in county jail prior to sentencing. An amendment is deemed remedial and applied retroactively when it relates to practice, procedure or remedies, and does not affect a substantive or vested right. *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 510, 730 P.2d 1327 (1986). The amendment clearly affects the substantive right to good–time credit. The change in the language of the provision is material. A material change in a statute gives rise to the presumption of a change in legislative intent. *Strunk v. State Farm Mut. Auto. Ins. Co.*, 90 Wn.2d 210, 213–14, 580 P.2d 622 (1978). The amendment evidences a major change in legislative intent because the plain language of the original enactment does not authorize good–time credit for presentence incarceration.

Accordingly, we find that the 1989 amendment to RCW 9.94A.150 is not remedial, and may not be applied retroactively. Therefore, we must reach Mota's constitutional claim.

## III

Mota and Baker claim they are entitled to relief under both article 1, section 12 of the Washington State Constitution and the equal protection clause of the United States Constitution. While the state privileges and immunities clause of article 1, section 12 has in the past been interpreted the same as the federal equal protection clause, those cases did not address the possibility that the difference in language might require a different interpretation. *See, e.g., American Network, Inc. v. Utilities & Transp. Comm'n,* 113 Wn.2d 59, 776 P.2d 950 (1989); *In re Olsen v. Delmore,* 48 Wn.2d 545, 295 P.2d 324 (1956). *But see State v. Carey,* 4 Wash. 424, 30 P. 729 (1892) (court used analysis based upon different language of State Constitution). Article 1, section 20 of the Oregon Constitution is virtually identical to our article 1, section 12, yet the Oregon court interprets its provision independently of the federal equal protection clause. *See Sofie v. Fibreboard Corp.,* 112 Wn.2d 636, 642 n.2, 771 P.2d 711 (1989) (citing *State v. Clark,* 291 Or. 231, 630 P.2d 810 (1981); *State v. Edmonson,* 291 Or. 251, 630 P.2d 822 (1981); *Salem v. Bruner,* 299 Or. 262, 702 P.2d 70 (1985)).

▮ However, the parties did not brief the state constitutional issue utilizing the nonexclusive neutral criteria set out in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986). Neither have they argued that the State Constitution's equal protection provision should be analyzed independently of the federal constitution. Having insufficient argument and briefing, we decline to consider their state constitutional claim, but rather decide this case on federal constitutional grounds. *See State v. Wethered,* 110 Wn.2d 466, 472, 755 P.2d 797 (1988).

We conclude that the failure of the Department of Corrections to award earned early release time for time served in county jail prior to formal sentencing violates the equal protection clause of the fourteenth amendment to the United States Constitution.

Equal protection requires that persons similarly situated receive like treatment. *Harmon v. McNutt,* 91 Wn.2d 126, 130, 587 P.2d 537 (1978). Out of the class of convicted felons, the good–time credit provisions treat those who are unable to obtain pretrial release differently from those who serve the entire sentence either in county jail or in a state institution. The latter receive the one–third reduction of their total sentence, while the former receive only one–third of the sentence as reduced by the number of days spent in presentence detention.

In *In re Mota, supra,* the Court of Appeals held that equal protection requires the Department of Corrections to make available good–time credit for presentence detention. 54 Wn. App. 252, 773 P.2d 129 (1989). The court determined that the purpose of good–time credit to encourage good behavior is served regardless of the place of confinement. *Mota,* 54 Wn. App. at 255. The court concluded that administrative convenience is not a substantial state interest under the SRA, applying the middle level of scrutiny recognized in *Plyler v. Doe,* 457 U.S. 202, 72 L. Ed. 2d 786, 102 S. Ct. 2382, *reh'g denied,* 458 U.S. 1131, 73 L. Ed. 2d 1401, 103 S. Ct. 14 (1982). *Mota,* 54 Wn. App. at 256.

The State relies on *McGinnis v. Royster,* 410 U.S. 263, 35 L. Ed. 2d 282, 93 S. Ct. 1055 (1973). The United States Supreme Court held that a New York statute which denied good–time credit for presentence jail time did not violate equal protection because it was rationally related to the state policy of rehabilitation. The Court used the rational basis level of scrutiny and limited its inquiry to "whether the challenged distinction rationally furthers some legitimate, articulated state purpose." *McGinnis,* 410 U.S. at 270. The distinction between sentences served in prison and presentence detention in county jail is premised on the rehabilitative purpose of state prisons as opposed to the purpose of county jails as primarily detention centers. The Court pointed out that the granting of good–time credit takes into account a prisoner's rehabilitative performance. *McGinnis,* 410 U.S. at 271. Thus, the Court held that it is

reasonable not to award good time for presentence detention where no systematic rehabilitative programs exist and where the prisoner's conduct is not observed. *McGinnis,* 410 U.S. at 272-73.

█ *McGinnis,* however, does not control this case. A higher level of scrutiny is applied to cases involving a deprivation of a liberty interest due to indigency. *See State v. Phelan,* 100 Wn.2d 508, 671 P.2d 1212 (1983).[1] Good-time credit is a recognized liberty interest. *Wolff v. McDonnell,* 418 U.S. 539, 557, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974) (state having created the right to good time, the prisoner's interest has real substance and is a liberty interest under the Fourteenth Amendment); *In re Anderson,* 112 Wn.2d 546, 548, 772 P.2d 510 (1989) (statutory right to good-time credits constitutes a liberty interest); *In re Piercy,* 101 Wn.2d 490, 495, 681 P.2d 223 (1984). Mota's inability to obtain pretrial release was due to indigency. The poor, while not a suspect class, are not fully accountable for their status. *State v. Phelan,* 100 Wn.2d at 514. Situations involving discrete classes not accountable for their status invoke intermediate scrutiny. *Plyler v. Doe, supra.* Accordingly, the denial of a liberty interest due to a classification based on wealth is subject to intermediate scrutiny. Under intermediate scrutiny, the state must prove the law furthers a substantial interest of the state. *Plyler v. Doe,* 457 U.S. at 217-18; *State v. Schaaf,* 109 Wn.2d 1, 17, 743 P.2d 240 (1987).

Under a rational basis standard, the statute would pass muster because there is a rehabilitative component. RCW 9.94A.010 lists the purposes of the SRA.

> The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does

---

[1]Liberty interests come under the due process clause, while classification or differing treatment based on status implicate the equal protection clause. Where liberty interests and such classifications converge, as in the present situation, most of the decisions in this area rest on an equal protection framework. *Bearden v. Georgia,* 461 U.S. 660, 665, 76 L. Ed. 2d 221, 103 S. Ct. 2064, 2068 (1983).

not eliminate, discretionary decisions affecting sentences, and to add a new chapter to Title 9 RCW designed to:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) *Offer the offender an opportunity to improve him or herself;* and

(6) Make frugal use of the state's resources.

(Italics ours.)

The State argues that *McGinnis* prohibits courts from picking and choosing among legitimate legislative aims to determine which is primary and which is subordinate. 410 U.S. at 275. This holds true for a rational basis test. However, under intermediate scrutiny, courts must inquire into the primacy of objectives to determine whether the state's proffered interest is substantial. We conclude that, under intermediate scrutiny, the statute does not pass constitutional muster because rehabilitation is not a substantial state interest.

Commentators agree that the SRA represents a major change in the philosophy of sentencing, and has discounted rehabilitation. *See* Ruark, *The Sentencing Reform Act of 1981: A Critique of "Presumptive Sentencing" in Washington,* 17 Gonz. L. Rev. 583 (1982); Comment, *Thoughts on a Recipe for Just Deserts: The Sentencing Reform Act of 1981,* 18 Gonz. L. Rev. 263 (1982–1983). Boerner states, "The reform reflects a fundamental shift in many of the basic premises that have guided sentencing in Washington . . . The rehabilitation of the offender is no longer a justifying purpose of sentencing . . .". D. Boerner, Sentencing in Washington 1-1, 1-2 (1985). The SRA denies judges the authority to require an offender to affirmatively participate in a rehabilitative program for all but two defined classes of offenders. D. Boerner § 2.5(c), at 2-36; RCW 9.94A.030(9).

Rehabilitation is entirely voluntary on the part of the offender. ·

▉ The previous indeterminate sentencing system focused on rehabilitation by basing sentences on the individual's characteristics, rather than the nature of the crime, and attempting to predict future behavior to coerce offenders into reforming. D. Boerner, at 1–1. Under the SRA, punishment is the paramount purpose. *State v. Rice*, 98 Wn.2d 384, 393, 655 P.2d 1145 (1982). The goal of standardized sentencing is equality of incarceration time depending upon the crime. Rehabilitation is irrelevant because it cannot change the length of the sentence. Thus, it is relegated to a minor role and comes into play only at the initiation of the offender.

Since rehabilitation does not rise to the level of a substantial interest under the SRA, it cannot justify disparate treatment of offenders.

*McGinnis* is also distinguishable by the fact that an amendment to the New York statute at issue abolished good time. 410 U.S. at 269. New York gave appellees the chance to elect the new procedure but they declined to do so. The United States Supreme Court felt that this lessened the disadvantage because appellees were in as favorable a position as those who could make bail. The defendants in the case at bar had no such option.

We also question whether Washington's earned early release system is in actuality a function of rehabilitation. The Court of Appeals decision accepts the assertion of Boerner that the purpose of good–time credit is to maintain discipline. *Mota*, at 255; D. Boerner § 10.11, at 10–9. Arguably, Washington's system represents a practical solution to the problem of prison discipline and controlling the prison population, and not a means of achieving rehabilitation.

▉ If this is so, the only state interest in not giving good–time credit for presentence detention would be the administrative inconvenience of creating programs in county jails to oversee the prisoner's behavior and determine if the prisoner has earned the credit. The 1989

amendment requiring each correctional facility to institute these programs, with county jails and the Department of Corrections working together, weakens the administrative inconvenience argument. We agree with the Court of Appeals that administrative convenience is not a substantial state interest.

The State also relies on this court's decision in *State v. Phelan*, 100 Wn.2d 508, 671 P.2d 1212 (1983). The court accepted the rationale of *McGinnis* and held that the failure to award good–time credit for presentence detention does not violate equal protection. The court based *Phelan* on pre–SRA law. Prior to the SRA, rehabilitation was as much a goal of sentencing as punishment or deterrence. However, the SRA emphasizes punishment over all else. This is an important distinction in this case. *Phelan* does not require a particular outcome in this case because it did not involve the SRA. We decided that case under an entirely different law.

Based on the intermediate level of scrutiny, RCW 9.94A-.150 violates the petitioner's right to equal protection of the law. The Department of Corrections must give offenders good–time credit for time served in county jail prior to trial and formal sentencing.

## IV

The State contends that the trial court erred in granting Baker 7 days of good–time credit for his pretrial confinement because it acted outside the bounds of its authority.

For offenders sentenced to incarceration in a state institution, the statute gives the authority to grant good time only to the DOC. RCW 9.94A.150 states that the sentence is reduced in accordance with procedures developed and promulgated by the DOC. The DOC determines the standards of good behavior and good performance.

The trial court has authority to award good–time credit if the sentence is in county jail. Former RCW 9.92.150 states:

> The sentencing judge of the superior court and the sentencing judge of courts of limited jurisdictions shall have authority and jurisdiction whereby the sentence of a prisoner, sentenced

to imprisonment in their respective county jail, may be reduced by up to one–third for good behavior.

This provision was repealed in 1989 and a new provision added which provides:

> The sentence of a prisoner confined in a county jail facility for a felony, gross misdemeanor, or misdemeanor conviction may be reduced by earned release credits in accordance with procedures that shall be developed and promulgated by the facility. The earned early release time shall be for good behavior and good performance as determined by the facility. In no case may the aggregate earned early release time exceed one–third of the total sentence.

Laws of 1989, ch. 248, § 1; RCW 9.92.151.

Thus, for convictions after July 1, 1989, the trial court no longer has the authority to grant good–time credit if the sentence is to county jail. Since the Legislature has abrogated the trial court's authority in this area, we will not expand it by allowing the trial court to grant the good–time credit in this case.

■ In *State v. Pepper*, 54 Wn. App. 583, 584, 774 P.2d 557 (1989), the Court of Appeals held that since neither former RCW 9.92.150 nor RCW 9.94A.150 give the sentencing judge authority to grant good–time credit for prisoners sentenced to the DOC, the authority resides in the DOC rather than the superior court.

The SRA gives the trial court no authority to grant good–time credit. Therefore, the responsibility for good–time credit for presentence detention in county jail for offenders sentenced to a state institution belongs to the DOC.

V

We affirm the Court of Appeals in *In re Mota, supra,* and remand both Mota and Baker to the DOC to compute and award good–time credit for time served prior to formal sentencing.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, DURHAM, SMITH, and GUY, JJ., concur.

ANDERSEN, J., concurs in the result.