110 P.3d 1122 (2005)
154 Wash.2d 204
In the Matter of the Personal Restraint of Brenda Louise WEST, Petitioner.
No. 75310-5.
Supreme Court of Washington, En Banc.
Argued January 20, 2005.
Decided April 28, 2005.
*1123 Darrel Lance Lahtinen, Seattle, for Petitioner.
Kathleen Proctor, Pierce County Prosecuting Attorneys Office, Tacoma, for Respondent.
BRIDGE, J.
¶ 1 In 1996, Brenda Louise West held up a Motel 6 clerk for $120. In exchange for a reduction of the charge from first degree robbery down to first degree theft, West agreed to serve an exceptional 10-year sentence. This eliminated the possibility that a conviction would result in her third strike. As part of her plea bargain, West also signed a waiver in which she agreed to serve the full 10-year sentence and requested that the Department of Corrections (Department) not make any calculation or application of earned early release time. The sentencing judge made a handwritten notation on the judgment and sentence explaining that West stipulated to 10 years flat time with no earned early release. The Department reads this notation to prohibit it from applying any earned early release credit to West's sentence.
¶ 2 West filed a personal restraint petition alleging that the handwritten notation renders the judgment and sentence facially invalid because it is not within the superior court's power to prohibit the accumulation of earned early release time. The Court of Appeals dismissed the petition, concluding that the notation merely memorialized West's stipulation to serve flat time, but did not actually prohibit the application of early release time. We disagree.
¶ 3 The handwritten notation was made by the trial court and became part of the judgment and sentence, thus carrying the imprimatur of the trial court. The Department considers itself bound by the trial court's writing and reads it to prohibit the application of early release time. Yet only the Department has the authority to grant or deny earned early release time, and thus the handwritten notation renders West's judgment and sentence facially invalid. We reverse the Court of Appeals, grant the petition, and remand to the sentencing court for deletion of the notation from West's judgment and sentence.

Facts and Procedural History
¶ 4 On July 21, 1996 Brenda West held up a clerk of a Motel 6 with a handgun, stealing $120 from the hotel's cash drawer. West was initially charged with one count of robbery in the first degree. If convicted of first degree robbery, West would have faced a life sentence without the possibility of parole as a persistent offender. West entered into a plea agreement with the State in which the State agreed to reduce the charge to theft in the first degree in exchange for West's guilty plea, her stipulation to an exceptional sentence of 10 years, and her waiver of any right to earned early release time.
¶ 5 West signed a written waiver of her earned early release time that acknowledged that only the Department has the authority to determine whether early release time has been earned. The waiver stated, in part:
I hereby waive my right to have any ... earned credit applied to my sentence in this case and stipulate that I shall serve ten years, flat time, in the Department of Corrections.... I request that the Department of Corrections not make any determination, calculation, or application of earned early release time in regards to my sentence so that the State may receive the benefit of its agreement with me. I do this freely and voluntarily as part of my plea agreement with the State.... I make this waiver to induce the State to file an Amended Information charging me with *1124 Theft in the First Degree rather than risk being convicted of a "most serious offense" and sentenced to life without possibility of parole.
Def.'s Waiver of Earned Early Release Time as Condition of Plea Agreement at 1-2 (emphasis added). On January 13, 1997, West pleaded guilty to theft in the first degree. The court sentenced West to 10 years, the statutory maximum for first degree theft. The judge also entered a handwritten notation on the judgment and sentence which reads, "defendant stipulates to flat timeno earned early release." J. and Sentence at 5.
¶ 6 West filed this petition more than one year after her judgment and sentence became final. The chief judge of Division Two of the Court of Appeals dismissed West's petition as untimely, concluding that the notation on West's judgment and sentence merely reflected her stipulation and it did not usurp the Department's authority:
West's agreement not to seek earned early release time does not bind the Department, which remains free to award or to withhold earned early release time as it sees fit. The trial court, therefore, did not exceed its sentencing authority in referring to this stipulation on the judgment and sentence.
Order Dismissing Pet. at 3. West filed a motion for discretionary review, which this court granted.

Analysis
¶ 7 RCW 10.73.090 establishes a one-year time limit for collateral attack on a judgment and sentence. However, the one-year time limit does not apply if a judgment and sentence is invalid on its face. RCW 10.73.090. Even where a judgment and sentence is invalid, to justify collateral relief a nonconstitutional error must also constitute "`a "fundamental defect which inherently results in a complete miscarriage of justice."'" See In re Pers. Restraint of Thompson, 141 Wash.2d 712, 719, 10 P.3d 380 (2000) (quoting In re Pers. Restraint of Fleming, 129 Wash.2d 529, 532, 919 P.2d 66 (1996) (quoting In re Pers. Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990))).
¶ 8 The Court of Appeals concluded that the handwritten notation on West's judgment and sentence simply reflected West's waiver of earned early release time and mere acknowledgment of West's stipulation would not bind the Department or exceed the trial court's sentencing authority. Order Dismissing Pet. at 3. However, in State v. Phelps, 113 Wash.App. 347, 57 P.3d 624 (2002), the same division of the Court of Appeals reached a different conclusion. In that case, the trial court included on the judgment and sentence a handwritten notation stating "`[t]he defendant agrees to extend the statute of limitation for refiling Count I for a period of 7 years from this Judgment and Sentence.'" Id. at 352, 57 P.3d 624 (quoting Clerk's Papers (CP) at 36). The Phelps court held that regardless of whether the trial court intended the notation to be a part of the sentencing order or merely an acknowledgment of the agreement, including the notation on the judgment and sentence gave it the imprimatur of the trial court. Id. at 357, 57 P.3d 624. We believe the Phelps court's conclusion is the correct one. In West's case, the Department reports that it is bound by the "plain language of the judgment and sentence" which "expressly states `defendant stipulates to flat timeno earned early release.'" Resp. of the Dep't of Corr. at 3 (quoting the judgment and sentence notation). The plain language of the notation does not limit its application and nothing suggests that the notation carries less than the full weight of the trial court's sentencing authority. See Phelps, 113 Wash.App. at 356-57, 57 P.3d 624. Therefore, we consider the notation to be part of the sentencing order.
¶ 9 The dissent cites to State v. Pharris, 120 Wash.App. 661, 86 P.3d 815 (2004) to support its conclusion that the Department can simply overlook the trial court's notation in this case. In Pharris, the defendant pleaded guilty to assault and unlawful imprisonment based on an incident in which he beat, stabbed, and burned his girlfriend over a period of seven hours. Id. at 666, 86 P.3d 815. On the same day, he pleaded guilty to drug charges. Id. The trial judge entered findings to support an exceptional sentence in the assault/unlawful imprisonment case *1125 and ordered that the concurrent standard range sentences for assault and unlawful imprisonment would be served consecutively to the standard range drug sentence. See RCW 9.94A.535 and 9.94A.589(a), (b). On the judgment and sentence in the drug case, the trial judge included a handwritten notation that read, "`[t]he sentence herein shall run consecutively with the sentence in [the assault conviction] but concurrently to any other felony cause not referred to in this Judgment.'" Pharris, 120 Wash.App. at 667, 86 P.3d 815 (quoting CP at 25). Pharris argued that this notation on the drug judgment and sentence created an unsupported exceptional sentence in the drug case. The Court of Appeals disagreed, holding that the notation did not impose an exceptional sentence in the drug case, but instead was "nothing but a cross reference to the exceptional sentence in the assault case." Id.[1] In doing so, the Court of Appeals determined what the trial court meant by its handwritten notation.
¶ 10 In Phelps, as in this case, the key issue was not what the trial court meant by its notation, but what weight the notation carried. In contrast, in Pharris, the key question involved the meaning of the notation itself. Moreover, in Pharris the trial court's notation referenced another judgment and sentence, which independently carried the authority of the trial court. In Phelps and in this case, the trial courts did not reference another valid judgment and sentence, but instead recited agreements between the prosecution and the defense that did not otherwise carry the authority of the trial court. See Phelps, 113 Wash.App. at 356-57, 57 P.3d 624; Waiver at 1-2.
¶ 11 The key question here, like in Phelps, is not what the notation means, but what weight it carries. The Department considers itself bound by the trial court's writing and reads it to prohibit the application of early release time. Again, we agree with the Phelps court's conclusion that regardless of whether the trial court intended the notation to be a part of the sentencing order, including it in the judgment and sentence gave it the imprimatur of the trial court. Id. at 357, 57 P.3d 624.
¶ 12 A judgment and sentence is invalid on its face if it exceeds the duration allowed by statute and the alleged defect is evident on the face of the document without further elaboration. See In re Pers. Restraint of Hemenway, 147 Wash.2d 529, 532, 55 P.3d 615 (2002); In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 866, 50 P.3d 618 (2002); Thompson, 141 Wash.2d at 718-19, 10 P.3d 380.[2] Whether the sentencing court has exceeded its statutory authority under the Sentencing Reform Act of 1981, chapter 9.94A RCW (SRA), is an issue of law. State v. Murray, 118 Wash.App. 518, 521, 77 P.3d 1188 (2003).
¶ 13 When West was sentenced, former RCW 9.94A.150 (1996) controlled early release from a correctional facility. The statute required that no offender could be released prior to the expiration of his or her sentence except as provided in the statute. Former RCW 9.94A.150(1). The statute allowed an offender's sentence to
be reduced by earned early release time in accordance with procedures that shall be developed and promulgated by the correctional agency having jurisdiction in which the offender is confined. The earned early release time shall be for good behavior and good performance, as determined by the correctional agency having jurisdiction.

Former RCW 9.94A.150(1) (emphasis added).[3] Notably, the statutory language grants authority to determine a prisoner's earned early release time to the correctional agency having jurisdiction over the offender.
*1126 ¶ 14 This court has recognized that former RCW 9.94A.150 provides no authority for the superior court to grant early release time. In re Pers. Restraint of Mota, 114 Wash.2d 465, 478, 788 P.2d 538 (1990). In Mota, we noted that:
For offenders sentenced to incarceration in a state institution, the statute gives the authority to grant good time only to the DOC [Department of Corrections]. [Former] RCW 9.94A.150 states that the sentence is reduced in accordance with procedures developed and promulgated by the DOC. The DOC determines the standards of good behavior and good performance.
Id. at 477, 788 P.2d 538 (emphasis added); see also State v. Hale, 94 Wash.App. 46, 56, 971 P.2d 88 (1999) ("Under RCW 9.94A.150, only the correctional agency (county jail or DOC) has the ability to grant `good time.'"). Presumably, if the trial court has no authority to grant earned early release time, it also has no authority to restrict it.
¶ 15 This conclusion is supported by the underlying purpose of earned early release time. See In re Pers. Restraint of Williams, 121 Wash.2d 655, 661, 853 P.2d 444 (1993). In Williams, we recognized that "the award or denial of good time serves important disciplinary goals." Id. at 661, 853 P.2d 444.
If a correctional institution is to be able to effectively administer its good-time policies in order to further prison discipline, it must actually have control over the award or denial of good time for offenders under its jurisdiction.... Accordingly, the statute grants control over the award or denial of good time to the institution in which the offender is actually incarcerated.
Id. at 662, 853 P.2d 444. The plain language of former RCW 9.94A.150, this court's prior discussion of the statute, and the underlying purpose of earned early release time all clearly indicate that sentencing courts have no authority to restrict the imposition of earned early release time. Imposition of a sentence that is not authorized by the Sentencing Reform Act is a fundamental defect which justifies collateral relief. In re Pers. Restraint of Breedlove, 138 Wash.2d 298, 304, 979 P.2d 417 (1999); see also Goodwin, 146 Wash.2d at 877, 50 P.3d 618 ("[T]he court has granted relief to personal restraint petitioners in the form of resentencing within statutory authority where a sentence in excess of that authority had been imposed, without regard to the plea agreements involved.").
¶ 16 The State and the Department argue that, even if the sentencing court acted outside its authority, West waived any right to earned early release time as part of her plea agreement, thereby precluding collateral relief. They are correct that direct appeal and collateral attack are not always available for defendants who have entered into plea agreements. Goodwin, 146 Wash.2d at 874, 50 P.3d 618 ("waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion.") But "waiver does not apply where the alleged sentencing error is a legal error leading to an excessive sentence." Id.
¶ 17 This court has repeatedly held that "an individual cannot, by way of a negotiated plea agreement, agree to a sentence in excess of that allowed by law." In re Pers. Restraint of Hinton, 152 Wash.2d 853, 861, 100 P.3d 801 (2004). See also Goodwin, 146 Wash.2d at 870, 50 P.3d 618 ("`a plea bargaining agreement cannot exceed the statutory authority given to the courts.'") (quoting In re Pers. Restraint of Gardner, 94 Wash.2d 504, 507, 617 P.2d 1001 (1980)); Thompson, 141 Wash.2d at 723, 10 P.3d 380 ("`[T]he actual sentence imposed pursuant to a plea bargain must be statutorily authorized....'") (quoting In re Pers. Restraint of Moore, 116 Wash.2d 30, 38, 803 P.2d 300 (1991)). A defendant simply "cannot empower a sentencing court to exceed its statutory authorization." State v. Eilts, 94 Wash.2d 489, 495-96, 617 P.2d 993 (1980). The fact that a defendant agreed to a particular sentence does not cure a facial defect in the judgment and sentence where the sentencing court acted outside its authority.
¶ 18 The State also argues that even if the sentencing court erred in attempting to govern West's earned early release time, West invited the error. State's Resp. to Pers. Restraint Pet. at 6. But Washington *1127 courts have held that even where a defendant clearly invited the challenged sentence by participating in a plea agreement, to the extent that he or she "can show that the sentencing court exceeded its statutory authority, the invited error doctrine will not preclude appellate review." Phelps, 113 Wash.App. at 354, 57 P.3d 624 (citing Goodwin, 146 Wash.2d at 872, 50 P.3d 618).[4] The Phelps court relied on Goodwin where this court clarified that "a sentence in excess of statutory authority is subject to collateral attack" and "a defendant cannot agree to punishment in excess of that which the Legislature has established." 146 Wash.2d at 873-74, 50 P.3d 618. The Goodwin court allowed collateral review of a post-plea agreement sentence, despite the invited error doctrine. See id. at 872-74, 50 P.3d 618. Therefore, the invited error doctrine does not apply where a sentence is outside the authority of the sentencing court.[5]
¶ 19 In sum, the handwritten notation on West's sentence constitutes a fundamental defect justifying collateral relief because the sentence exceeds the sentencing court's statutory authority and the defect is not cured by the fact that West agreed to the limitation of her earned early release time as part of her plea bargain. Moreover, we do not apply the invited error doctrine where the sentencing court has acted outside of its statutory authority.
¶ 20 This court has been clear that "the imposition of an unauthorized sentence does not require vacation of the entire judgment or granting of a new trial. The error is grounds for reversing only the erroneous portion of the sentence imposed." Eilts, 94 Wash.2d at 496, 617 P.2d 993 (citation omitted). See also Goodwin, 146 Wash.2d at 877, 50 P.3d 618 ("Correcting an erroneous sentence in excess of statutory authority does not affect the finality of that portion of the judgment and sentence that was correct and valid when imposed.") and Phelps, 113 Wash.App. at 358, 57 P.3d 624 (reversing only an incorrect notation on a judgment and sentence). In this case, the only portion of the judgment and sentence that is invalid is the sentencing judge's handwritten notation regarding earned early release time. In fact, West has requested only that we vacate the part of her judgment and sentence that forbids the award of early release time. Mot. for Discretionary Review at 11. Therefore, we reverse the Court of Appeals, grant the petition, and remand for correction of the invalid judgment and sentence in the form of deletion of the handwritten notation.

Conclusion
¶ 21 The handwritten notation on the judgment and sentence carries the imprimatur of the sentencing court and we consider it to be part of the sentencing order. The sentencing court exceeded its statutory authority when it purported to govern West's earned early release time. Because a defendant cannot agree to a sentence in excess of the court's statutory authority, West's waiver cannot cure the defect on the judgment and sentence. Therefore, the judgment and sentence is fundamentally defective, justifying collateral relief. We reverse the Court of Appeals, grant the petition, and remand to the sentencing court for deletion of the handwritten notation.
ALEXANDER, C.J., MADSEN, SANDERS, CHAMBERS, OWENS AND FAIRHURST, JJ., concur.
J.M. JOHNSON, J. (dissenting).
¶ 22 The majority allows a convicted felon to renege on a written plea agreement that bargained away a potential life sentence under our state's "three strikes law" for a fixed 10-year term, and to do so many years after the 1-year deadline for collateral attack. The majority rationalizes this result by asserting *1128 that its decision is necessary to avoid a "`miscarriage of justice.'" Majority at 1124 (quoting In re Personal Restraint of Thompson, 141 Wash.2d 712, 719, 10 P.3d 380 (2000).) Because neither RCW 10.73.090 nor this court's jurisprudence support the majority's decision to belatedly invalidate West's judgment and sentence, and because the result reached by the majority ironically works a miscarriage of justice in its own right, I dissent.

FACTS
¶ 23 The facts are set forth in the majority opinion. A summary of those particularly important is included herein for ease of reference.
¶ 24 Prior to the current matter, West had (at least) five convictions involving first degree robbery, including one bank robbery.[1] Because several of these convictions predated this state's "three strikes law," see Initiative 593 (approved by voters Nov. 2, 1993, now codified at RCW 9.94A.030(28), .030(32), .505, .555, .570), that statute had not previously affected her criminal career.
¶ 25 In 1996 West held up a Motel 6 clerk, pointing a pistol at the clerk's heart. When apprehended for this crime, she was again charged with first degree robbery. Because of the determination of Washington voters to end criminal careers exceeding three serious offenses, West faced a life term under the "three strikes law" if convicted as charged for the latest offense. To avoid this stark reality, West and her counsel negotiated a plea bargain with the State. As part of this bargain, West pleaded guilty to a reduced charge of first degree theft and agreed to serve the full 10-year maximum sentence for this crime. In exchange, the State dropped the "third strike" offense of first degree robbery. This undoubtedly was a reasonable bargain for an accused, like West, facing a life sentence if convicted as charged.
¶ 26 The parties agreed that a 10-year sentence, the statutory maximum sentence available under the lesser charge, could be fulfilled only if West was not credited with early release time by the Department of Corrections (Department). West's written plea agreement was explicit regarding both the consideration for her plea and her waiver of early release time:
I request that the Department of Corrections not make any determination, calculation, or application of earned early release time in regards to my sentence so that the State may receive the benefit of its agreement with me. I do this freely and voluntarily as part of my plea agreement with the State. I understand that this waiver is a necessary condition of the plea agreement. I make this waiver to induce the State to file an Amended Information charging me with Theft in the First Degree rather than risk being convicted of a "most serious offense" and sentenced to life without possibility of parole.
Defendant's Waiver of Earned Early Release Time as Condition of Plea Agreement at 1-2. The trial court duly entered West's judgment and sentenced her to a term of 120 months, adding a handwritten notation calling attention to the written waiver: "defendant stipulates to flat timeno earned early release[.]" J. and Sentence at 5.
¶ 27 West was incarcerated in a corrections facility. She did not appealas she had waived that rightand did not collaterally attack her conviction within the one-year time limit provided in RCW 10.73.090. However, more than six years later, West filed this personal restraint petition. This was obviously beyond the deadline set forth in RCW 10.73.090 and, not coincidentally, was close to the time she could have been released with early release credit if she had not agreed to serve a fixed 10-year sentence.[2]

*1129 ANALYSIS
¶ 28 Under the state Constitution and relevant statutes, the rights of all citizens must be vigorously protected, including those of persons charged with crimes. Thus, a criminal defendant is entitled to an appeal as of right after he or she has been convicted. After the deadline for appeal has passed (or, as here, been expressly waived), we allow a prisoner to collaterally attack his or her conviction, but only within one year of the date that the judgment and sentence became final. We have repeatedly recognized the strong public policies that underlie limits on collateral attack against criminal judgments:
Collateral relief undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders. These are significant costs and they require that collateral relief be limited....
In re Pers. Restraint of Hagler, 97 Wash.2d 818, 824, 650 P.2d 1103 (1982) (citation omitted). See also In re Pers. Restraint of Isadore, 151 Wash.2d 294, 299, 88 P.3d 390 (2004), In re Pers. Restraint of Matteson, 142 Wash.2d 298, 303, 12 P.3d 585 (2000), and In re Pers. Restraint of Cook, 114 Wash.2d 802, 809, 792 P.2d 506 (1990).
¶ 29 Because of the importance of these policies, the statute governing collateral attacks speaks prohibitively:
(1) No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
(2) For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. "Collateral attack" includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion for a new trial, and a motion to arrest judgment.
RCW 10.73.090(1) and (2). Even this deadline can be overcome in an extraordinary case if a judgment contains "`a fundamental defect which inherently results in a complete miscarriage of justice.'" Majority at 1124 (quoting In re Pers. Restraint of Thompson, 141 Wash.2d at 719, 10 P.3d 380.)
¶ 30 Personal restraint procedure derives from the writ of habeas corpus, which is guaranteed by article IV, section 4 of our state constitution. Hagler, 97 Wash.2d at 823, 650 P.2d 1103. The dignity of this extraordinary remedy is enhanced where a court judiciously limits its application to avoid demonstrable "miscarriages of justice." In my view, Division Two of the Court of Appeals, acting through the chief judge, has properly applied the law and concluded that there was no miscarriage of justice here. Its decision should be affirmed, and petitioner left to comply with her plea agreement.
¶ 31 The majority, however, disagrees. It asserts that RCW 10.73.090's time bar does not apply here because "the handwritten notation on West's sentence constitutes a fundamental defect" that comprises a complete miscarriage of justice. Majority at 1127. The majority bases this assertion on the belief that imposing the sentence agreed to by West exceeds the sentencing court's authority. Majority at 1125-27. Moreover, the majority claims that "the defect is not cured by the fact that West agreed to the limitation of her earned early release time as part of her plea bargain." Majority at 1127. See also Majority at 1126-27. These conclusions are not compelling.[3]
¶ 32 First, in finding that the notation constitutes a fundamental defect, the majority assumes the notation to be part of the sentencing order. Majority at 1124. To support this conclusion, the majority cites a Court of Appeals' opinion that held that a notation on a sentencing order carried the "imprimatur" of the court, regardless of what the trial court may have intended. State v. Phelps, 113 Wash.App. 347, 357, 57 P.3d 624 (2002). The Phelps court did not cite any authority, and the majority similarly adopts *1130 this Court of Appeals' holding without discussion or citation.
¶ 33 A notation on a sentencing order may not be intended as part of the order. In State v. Pharris, 120 Wash.App. 661, 86 P.3d 815 (2004), for example, defendant Pharris submitted Alford[4] pleas to charges in two separate cause numbers: (1) second degree assault while armed with a deadly weapon after beating, stabbing, and burning his girl friend, and (2) possession of methamphetamine while armed with a firearm. Id. at 663, 666, 86 P.3d 815. Pharris was sentenced under both cause numbers on the same day, receiving an exceptional sentence on the assault charge and a standard sentence on the drug charge. Id. at 666, 86 P.3d 815. In a handwritten notation on the judgment and sentence for the drug conviction, the judge indicated that the sentence was to run consecutively to the sentence imposed for the assault charge, thereby exceeding the standard sentencing range. Id. at 666-67, 86 P.3d 815.
¶ 34 On appeal, Pharris asserted that the judgment in the drug charge amounted to an exceptional sentence. Id. at 667, 86 P.3d 815. In response, the court stated:

Pharris's argument elevates form over substance. The sentence in this case is within the standard range. Pharris relies entirely upon the following handwritten notation: "The sentence herein shall run consecutively with the sentence in [the assault conviction] but concurrently to any other felony cause not referred to in this Judgment. RCW 9.94A.589." This is plainly nothing but a cross reference to the exceptional sentence in the assault case.
Id. (footnote omitted) (additions in original). Unquestionably, the handwritten cross reference in Pharris was not intended as part of the order. In the instant case, the majority makes the same error as Pharris urged (unsuccessfully). The judge's handwritten notation in West's case, and in Phelps, was intended only to reference the prior plea agreements.
¶ 35 This court has held that the burden rests on a petitioner to prove that the petition fits within the statutory exception to the one-year limit, i.e., that it is facially invalid. Shumway v. Payne, 136 Wash.2d 383, 400, 964 P.2d 349 (1998). Here, West presents no evidence that the notation was anything more than a reference to her plea agreement with the State.
¶ 36 In addition, the majority makes no argument that the sentencing court exceeded its statutory authority. By statute, first degree theft is punishable by a maximum sentence of 10 years. See RCW 9A.56.030(2), 9A.20.021(1)(b). Thus, the sentencing court acted fully within its powers in approving such a sentence here. West made no showing that the court ordered her early release or late release or ordered any other action prohibited by law. The judge's notation simply indicated that West had agreed to serve flat time without earned early release credits. Unless West can show that her agreement was not knowing and voluntary, her agreement is valid. See, e.g., State v. Branch, 129 Wash.2d 635, 642, 919 P.2d 1228 (1996).
¶ 37 Assuming, arguendo, a notation could render the sentencing order defective, West is not legally entitled to the relief she requests. Even if the notation on the judgment and sentence form is stricken, that doesn't invalidate her plea agreement. Neither West nor the majority claims that West's written waiver was itself invalid. They argue only that the sentencing court should not reference it on the Judgment and Sentence and that doing so rendered the document facially invalid. However, it was that plea agreement, not the Judgment and Sentence, that contained her agreement that the Department not calculate any earned early release credits and that she serve a fixed 10-year sentence. West does not have any entitlement to early release credits and, despite the majority's decision today, it is clear that the Department is not required to grant them. Under the reasoning of the majority, we have no more authority to grant early release time to West than the sentencing court had to withhold it. That determination is charged to the Department. West has established no legal grounds that support *1131 her argument that she must receive early release credit in violation of her plea agreement.
¶ 38 Moreover, the court notation of the plea agreement did not result in a "complete miscarriage of justice." Without this plea agreement, West would have been facing her third strike and a possible life sentence. She chose to avoid facing a charge carrying a life sentence by agreeing to serve 10 years flat time. Under this court's decisions, West either "invited" the alleged error or waived her objection, and did so knowingly and expressly in writing.
¶ 39 The doctrine of invited error "`prohibits a party from setting up an error at trial and then complaining of it on appeal.'" In re Pers. Restraint of Breedlove, 138 Wash.2d 298, 312, 979 P.2d 417 (1999) (quoting State v. Wakefield, 130 Wash.2d 464, 475, 925 P.2d 183 (1996).) In Breedlove, petitioner, as part of a settlement, agreed he would not challenge the imposition of an exceptional sentence. This court held that he was bound by his agreement, but remanded for correction of the sentence by entering findings of fact and conclusions of law. What we said of Breedlove, we must say here of West: "There is no miscarriage of justice where the sentence imposed is the precise sentence requested by the defendant." Id. at 311, 979 P.2d 417.
¶ 40 The majority's decision also undoubtedly has some unintended consequences. First of all, it disregards the rights of the victim(s), which are expressly protected by Washington's Declaration of Rights. See Const. art. I, § 35. A victim has a constitutional right to be heard at trial or sentencing and at "any proceeding where the defendant's release is considered." Id. There is nothing in the majority's opinion to indicate that the victim, who believed West would serve 10 years, has been considered.
¶ 41 The majority's decision will have further negative effect through discouraging prosecutors from plea agreements in the future, in derogation of well-settled public policy:
The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged.

Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (emphasis added). See also State v. James, 48 Wash.App. 353, 362, 739 P.2d 1161 (1987). In the future, the wise prosecutor may opt to seek convictions on all third strike charges and the certain results that flow from them, rather than see their good faith negotiations set aside, and sentences lowered further than agreed.
¶ 42 Such may even be West's ultimate fate here. In addition to the provisions recounted above, West's plea agreement also provides:
[I]f I ever seek or support the application of earned early release time to my sentence in this matter that this constitutes a breach of my agreement with the State and will give the State grounds to seek the withdrawal of the plea and the Amended Information.
Defendant's Waiver of Earned Early Release Time as Condition of Plea Agreement at 2. Enforcement of this provision could send West back for trial on the original chargesand a life sentence.

CONCLUSION
¶ 43 I would hold that the Court of Appeals correctly dismissed West's petition. It is essential to the practical administration of our criminal justice system that both parties be able to rely on the performance of plea agreements negotiated in good faith. Here, the petitioner undoubtedly gained greatlyavoiding the life sentence to which our laws and her conduct might otherwise have sentenced her. This court should adhere to the statutory framework for collateral attack and honor such agreements. In failing to do so, it is the majority, not the trial court, which sanctions a "complete miscarriage of justice."
¶ 44 I therefore dissent.
C. JOHNSON, J. (concurring in dissent).
¶ 45 I agree that West has not established a manifest injustice which would entitle her *1132 to relief and would affirm the Court of Appeals decision dismissing the petition.
NOTES
[1] In contrast the notation imposing the exceptional sentence on the assault judgment and sentence read "`the court finds that an exceptional sentence is appropriate, and [the sentence in the drug charge] is to be run consecutively.'" Pharris, 120 Wash.App. at 667 n. 12, 86 P.3d 815 (quoting CP at 25).
[2] Collateral documents, signed as part of a plea agreement, may be considered when those documents are relevant in assessing the validity of the judgment and sentence. Hemenway, 147 Wash.2d at 532, 55 P.3d 615.
[3] The current equivalent provision can be found at RCW 9.94A.728. The relevant language remains identical. RCW 9.94A.728(1).
[4] See also State v. Gronnert, 122 Wash.App. 214, 224-25, 93 P.3d 200 (2004).
[5] The dissent points to Breedlove, 138 Wash.2d at 311, 979 P.2d 417, to support its conclusion that West invited the trial court's error in this case. Dissent at 10. But Breedlove predates Goodwin and Breedlove was not a case where the trial court acted outside of its sentencing authority. See Breedlove, 138 Wash.2d at 310, 979 P.2d 417. In fact, the Breedlove court noted that "[i]mposition of a sentence which is not authorized by the SRA is a fundamental defect which may justify collateral relief." Id. at 304, 979 P.2d 417.
[1] An arrest warrant for West was outstanding at the time of this crime due to a parole violation tied to her conditional release from the previous bank robbery conviction.
[2] Though West's Department records show "fighting" and "feigning illness" as factors reducing her earning of good time credit, it appears that she would have earned such credit through most of her imprisonment but for her waiver agreement.
[3] Note that this alleged "facial invalidity" was discovered over six years after the sentence was entered without objection by West or her counsel.
[4] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).