[No. 76665-7. En Banc.]
Argued November 15, 2005. Decided March 16, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. JOSHUA JAMES ERMELS, *Petitioner*.

530

*Oliver R. Davis* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Nelson K.H. Lee* and *Brian M. McDonald, Deputies,* for respondent.

¶1 Bridge, J. — Joshua James Ermels pleaded guilty to manslaughter in the second degree after he stomped on the head of an unconscious victim and the man later died. As part of his plea agreement, Ermels stipulated to facts supporting an exceptional sentence based on victim vulnerability, and he stipulated that there was a legal basis for an exceptional sentence. He also specifically waived his right to appeal the basis for and propriety of an exceptional sentence. Ermels nevertheless argued to the Court of Appeals, after *Blakely v. Washington* was decided, that he had not knowingly, intelligently, and voluntarily waived his right to appeal or his right to have a jury find the facts necessary to support his exceptional sentence. 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Notably, in this court Ermels does *not* argue that his exceptional sentence relies on impermissible *Blakely* fact finding. He asks that this court reverse his exceptional sentence and remand for resentencing within the standard range.

¶2 We conclude that Ermels cannot obtain the remedy he seeks. Ermels stipulated to the facts supporting his exceptional sentence *and* that there was a legal basis for an exceptional sentence. Because those elements were indivisible from the rest of his plea agreement, he cannot challenge the exceptional sentence without challenging the entire plea. For the same reason, Ermels cannot challenge the validity of his appeal waiver without challenging his entire plea. Because Ermels does not challenge his entire plea, we affirm the Court of Appeals and uphold his exceptional sentence.

# I

## Statement of Facts

¶3 Shortly before 1 AM on July 14, 2002, Mike Kaneski and his roommate were walking home to their apartment. In front of a grocery store, the men encountered Ermels and Floyd Atkins. Shortly after, Ermels entered the grocery store. Atkins then accused the men of " 'having a problem' " with his friend. Clerk's Papers (CP) at 3. Atkins punched Kaneski in the face and Kaneski fell to the ground, striking his head on the cement and losing consciousness.

¶4 Ermels exited the grocery store and confronted Kaneski's roommate, who was trying to call 911 from a pay phone. Several witnesses reported that Ermels then approached Kaneski as he lay unconscious, jumped into the air, and stomped on Kaneski's head. Ermels kicked Kaneski a second time before leaving the scene with Atkins. When police arrived, Kaneski was transported to Harborview Medical Center, where he was treated for serious head injuries.

¶5 Police identified Ermels as a suspect and arrested him. They found bloody clothing and shoes in Ermels' home. Ermels confessed to having kicked Kaneski in the head. He also led police to Atkins, who eventually confessed to punching Kaneski. Sadly, Kaneski's condition deteriorated and he died a few days later.

¶6 Originally, Ermels was charged with first degree assault. The standard range sentence for first degree assault (with an offender score of zero) would have been 93 to 123 months. RCW 9.94A.510, .515. After Kaneski died, Ermels entered into a plea agreement with the State, and the second amended information charged him with second degree manslaughter. Ermels entered an *Alford*[1] plea to this charge. The standard range sentence for second degree

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). While there was evidence that the initial blow from the cement caused Kaneski's death, not Ermels' subsequent kicks, Ermels agreed to plead guilty to second

manslaughter was 21 to 27 months, followed by 18 to 36 months of community custody, with a maximum term of 10 years. The prosecutor indicated that he would recommend a 10-year sentence. In his statement on the plea of guilty, Ermels explained:

> I wish to plead guilty to the charge of manslaughter in the second degree *to avoid the risk of conviction at trial of assault in the first degree,* an offense with a longer standard range, and to take advantage of the opportunity to ask the court to sentence me within the standard range for manslaughter second degree or to a lesser sentence than the sentence that the state is requesting.

CP at 26 (emphasis added). The parties also stipulated that the facts set forth in the certification for determination of probable cause and the prosecutor's summary were "real and material facts for purposes of this sentencing." CP at 33. In his supplemental statement, attached to his plea agreement, Ermels stipulated:

> 2) . . . I hereby knowingly, voluntarily, and intelligently agree and stipulate that *there is a basis for an exceptional sentence upward* with the understanding that the State will recommend an exceptional sentence of 120 months confinement (maximum term). While I agree and stipulate there is a basis for an exceptional sentence upward, I am not agreeing to the State's recommendation regarding the confinement period;
>
> 3) . . . *I further agree that there is sufficient evidence for the court to impose an exceptional sentence upward* based on the following aggravating factor—a) I knew or reasonably should have known that the victim was particularly vulnerable because he was lying on the ground at the time that I assaulted him;
>
> 4) . . . I acknowledge that under *In re [Personal Restraint of] Breedlove,* 138 Wn.2d 298, 979 P.2d 417 (1999), *my stipulation that there is basis for an exceptional sentence as part of a plea agreement is a substantial and compelling reason that justifies such a sentence* under the Sentencing Reform Act [of 1981, chapter 9.94A RCW];

degree manslaughter to avoid conviction for first degree assault, a crime with a higher standard range.

5) Pursuant to this plea agreement, *I knowingly, voluntarily, and intelligently waive my right to appeal the basis for and propriety of the imposition of an exceptional sentence upward, but reserve the right to appeal the length of the sentence imposed.* I understand that pursuant to this plea agreement, there is a substantial likelihood that the court will impose an exceptional sentence upward;

CP at 31-32 (emphasis added).

¶7 The trial court imposed an exceptional sentence of 90 months (7.5 years). In his findings of fact and conclusions of law supporting the exceptional sentence, the trial judge explained that he considered the certification of determination of probable cause, the supplemental plea agreement statement, and arguments of counsel. The findings recite the facts set forth in the certification, specifically that Ermels jumped in the air, stomped on Kaneski's head, and then kicked him again. The trial court also recited the concessions made in the supplemental plea statement. The trial judge concluded that Ermels either knew or should have known that Kaneski was particularly vulnerable and that this constituted exceptional and deliberate cruelty. While he concluded that a sentence within the standard range was too lenient, he also concluded that the maximum sentence was also inappropriate.

¶8 The trial court concluded that there were four substantial and compelling reasons for imposing an exceptional sentence: Ermels knowingly, intelligently, and voluntarily agreed and stipulated that there was a basis for an exceptional sentence upward; Ermels knew or should have known that the victim was particularly vulnerable because he was lying on the ground; Ermels' actions were exceptionally and deliberately cruel; and a standard range sentence was clearly inadequate and too lenient. The trial judge also attached the certification for probable cause and Ermels' supplemental statement. The findings of fact and conclusions of law were entered in January 2004.

¶9 The United States Supreme Court decided *Blakely* in June 2004. 542 U.S. 296. Ermels appealed, arguing that *Blakely* rendered Washington's exceptional sentencing statutes facially unconstitutional. *State v. Ermels*, 125 Wn. App. 195, 199, 104 P.3d 67 (2005). He also argued that his exceptional sentence was invalid because a judge, not a jury, found the facts supporting his sentence and the court did so under the wrong standard of proof. *Id.*[2] The Court of Appeals concluded that Washington's exceptional sentence statutes were not rendered facially unconstitutional by *Blakely*. *Id.* Noting that Ermels explicitly waived his right to appeal the basis for and the propriety of the imposition of an exceptional sentence upward, the court concluded that Ermels could not undo that waiver, or the stipulation that an exceptional sentence was justified, without having to seek to undo the plea agreement in its entirety. *Id.* at 200. Additionally, the court held that Ermels was precluded from seeking appellate review of the basis for and propriety of his exceptional sentence because he did not challenge the validity of the appeal waiver. *Id.*[3] Ermels filed a petition for review, which this court granted. *State v. Ermels*, 154 Wn.2d 1033 (2005).

## II

## Analysis

¶10 By statute, a Washington court may impose an exceptional sentence outside the standard range if it concludes that "there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. RCW 9-

---

[2] As noted, Ermels does not renew this argument here. *See* Pet. for Review; Pet'r's Suppl. Br.

[3] Citing *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970), the State also argued that *Blakely*, as a postplea change in the law, did not render Ermels' stipulation invalid and unenforceable. However, the Court of Appeals concluded that it need not reach this issue. *Ermels*, 125 Wn. App. at 201. The Court of Appeals also rejected Ermels' challenge to the length of his sentence. *Id.* Ermels abandoned that challenge in this court.

.94A.535 provides that whenever an exceptional sentence is imposed, the court must set forth reasons for its decision in written findings of fact and conclusions of law. A nonexclusive list of factors justifying an upward departure from a standard range sentence is set forth in RCW 9.94A.535(2) and (3) (aggravating circumstances); former RCW 9.94A.535(2) (2003). At the time of Ermels' plea, an exceptional sentence above the standard range was justified if "the defendant knew or should have known that the victim . . . was particularly vulnerable or incapable of resistance due to . . . disability, or ill health." Former RCW 9.94A.535(2)(b).[4] Furthermore, this court has held that a stipulation to an exceptional sentence is enough, in and of itself, to constitute a substantial and compelling reason to justify an exceptional sentence, so long as the sentence is authorized by statute and the findings also show that the sentence is consistent with the goals of the Sentencing Reform Act of 1981. *Breedlove*, 138 Wn.2d at 300.

¶11 The Sixth Amendment guarantees criminal defendants a right to trial by jury. U.S. CONST. amend. VI. In 2000, the United States Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). After *Apprendi*, this court held that "the factual basis for an exceptional sentence upward need not be charged, submitted to the jury, and proved beyond a reasonable doubt" because aggravating factors "neither increase the maximum sentence nor define a separate offense calling for a separate penalty." *State v. Gore*, 143 Wn.2d 288, 314-15, 21 P.3d 262 (2001). In *Blakely*, 542 U.S. at 303, the United States Supreme Court disagreed and held that the " 'statutory maximum' " is the "maximum sentence a judge may

---

[4] *See also* RCW 9.94A.535(3)(b) ("The defendant knew or should have known that the victim . . . was particularly vulnerable or incapable of resistance.").

impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" In other words, the "statutory maximum" is the maximum that a judge may impose *"without* any additional findings." *Id.* at 304.

■ ¶12 However, the *Blakely* Court also acknowledged that a jury need not find facts supporting an exceptional sentence when a defendant pleads guilty and stipulates to the relevant facts:

> [N]othing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial fact-finding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty.

*Id.* at 310 (citations omitted).

¶13 Recently, in *State v. Hughes*, 154 Wn.2d 118, 134, 110 P.3d 192 (2005), we concluded that *Blakely* did not render Washington's exceptional sentencing provisions facially unconstitutional. Notably, none of the consolidated *Hughes* defendants, even the one who pleaded guilty, stipulated to the facts supporting an exceptional sentence or that there was a legal basis for an exceptional sentence. We determined that the trial court in each case had engaged in fact finding that violated the defendants' *Blakely* rights and no valid factors survived to support the exceptional sentence. *Id.* at 137, 140, 142. In considering the question of remedy, we noted that the legislature had not yet created a procedure to empanel a jury on remand in order to find necessary facts to support an exceptional sentence. *Id.* at 151-52. We concluded that for this court to create such a procedure "out of whole cloth would be to usurp the power of the legislature." *Id.* Therefore, we remanded for resentencing within the standard range. *Id.* at 156. Ermels asks that we grant the *Hughes* remedy in his case.

Waivers

¶14 When entering into his plea agreement, Ermels engaged in two waivers. First, when he stipulated to facts supporting his exceptional sentence and that a legal basis existed for an exceptional sentence, he necessarily relinquished any opportunity to a trial by jury on that issue. CP at 31-32. In addition, he specifically waived his right to appeal the basis for and propriety of the imposition of an exceptional sentence upward. CP at 32. Ermels argues that he could not have knowingly waived his *Blakely* right to have a jury determine the facts supporting his exceptional sentence beyond a reasonable doubt because Washington law at the time explicitly stated that he did not have such a right. *See Gore,* 143 Wn.2d at 314-15. The State argues that Ermels' waiver of his right to appeal precludes him from appealing his exceptional sentence despite *Blakely*'s later change in the law.

■ ¶15 *Waiver of the* Blakely *Right to Jury Trial:* First, Ermels' petition for review does not allege that the trial court violated *Blakely* by relying on improper fact finding. *See generally* Pet. for Review at 1-2.[5] He argues that Washington's exceptional sentencing scheme is facially unconstitutional, but he does not argue that his sentence relies upon improper *Blakely* fact finding. Pet. for Review at 4-11. After *Hughes,* Ermels' surviving argument is reduced to a contention that the portions of his plea agreement acknowledging that there was a factual and legal basis for an exceptional sentence upward and waiving his right to appeal the basis for and propriety of the exceptional sentence were not knowing, intelligent, and voluntary. It is important to note that *Blakely* clearly applies to all cases pending on direct review and not yet final when it was decided, including this case. *State v. Evans,* 154 Wn.2d 438,

---

[5] While Ermels briefly argues that the trial court applied a preponderance standard, even though *Blakely* requires a finding of aggravating factors beyond a reasonable doubt, that argument ignores the fact that Ermels stipulated both to the underlying facts *and* to the legal conclusion that the facts were a sufficient basis for an exceptional sentence. Pet. for Review at 13; CP at 31-32.

444, 114 P.3d 627 (2005). However, Ermels does not argue that his exceptional sentence relies on improper *Blakely* fact finding; instead, he contends that the waivers set forth in the plea agreement are not valid.

 ¶16 In *Breedlove*, this court held that a defendant's stipulation to an exceptional sentence, made as a part of a valid plea agreement, may be considered a substantial and compelling reason that justifies imposition of an exceptional sentence. 138 Wn.2d at 300. The sentencing court's findings must show the exceptional sentence is consistent with the purposes of the Sentencing Reform Act of 1981. *Id.* Yet when a defendant has stipulated to an exceptional sentence, he waives his right to appellate review of the sentence. *Id.* at 300, 311. Here, Ermels stipulated to the facts supporting his exceptional sentence, he stipulated that he knew or reasonably should have known that his victim was particularly vulnerable because he was lying on the ground when Ermels assaulted him, and Ermels stipulated that there was a legal basis for an exceptional sentence. CP at 31-33. Thus, while the trial court found additional aggravating factors also supported the exceptional sentence, they were not necessary given that Ermels' stipulation and Kaneski's particular vulnerability constituted substantial and compelling reasons for the exceptional sentence. *See* CP at 62. This court has held that not every aggravating factor must be valid to uphold an exceptional sentence, so long as this court is satisfied that the trial court would have imposed the same sentence based on the factors that are upheld. *Hughes*, 154 Wn.2d at 134.

¶17 Even so, some support for Ermels' position can be found in *State v. Monroe*, 126 Wn. App. 435, 109 P.3d 449 (2005), *review deferred, State v. Monroe*, 2005 LEXIS 727 (Wash. Sept. 7, 2005) (petition for review deferred pending the outcome of *State v. Borboa,* No. 76547-2 and *State v. Clarke*, No. 76602-9), and *State v. Harris*, 123 Wn. App. 906, 99 P.3d 902 (2004), *overruled on other grounds by Hughes*, 154 Wn.2d 118. In both cases, the Court of Appeals held

that the defendants could not have knowingly waived their *Blakely* right to a jury trial because the established rule in this state under *Gore* was that a defendant had no right to have a jury decide facts supporting exceptional sentences. *Monroe*, 126 Wn. App. at 442. The defendants could not have waived a right that the *Gore* court held they did not have. *Harris*, 123 Wn. App. at 921.

██ ██ ¶18 However, in both *Harris* and *Monroe*, the defendants did not stipulate that the facts constituted a basis for an exceptional sentence and exceptional sentences were not part of the plea agreements in those cases. *Monroe*, 126 Wn. App. at 437-38; *Harris*, 123 Wn. App. at 912-13. In fact, in both cases, the trial courts imposed exceptional sentences sua sponte. *Monroe*, 126 Wn. App. at 437-38; *Harris*, 123 Wn. App. at 912-13. Neither of these cases involved a plea agreement that included a stipulation to the validity of an exceptional sentence as part of the bargain. In contrast, in this case, even if we assume for the sake of argument that Ermels' waivers were not knowing, we still must take into account that Ermels agreed that there was a basis for an exceptional sentence as part of his plea bargain.

¶19 Ermels asks *only* that we apply the *Hughes* remedy and remand for imposition of a sentence within the standard range. *See* Pet'r's Suppl. Br. at 17-20 (arguing that Ermels need not challenge his entire plea); *Hughes*, 154 Wn.2d at 156. However, *Hughes* governs the remedy where the exceptional sentence relies on improper *Blakely* fact finding. *Id.* at 137, 140, 142. Here, the trial court's imposition of the exceptional sentence did not violate *Blakely* because Ermels stipulated both to the facts supporting his exceptional sentence and that there was a legal basis for the exceptional sentence. CP at 31-32; *Blakely*, 542 U.S. at 310.

¶20 Ermels' limited request for remedy is fatal because it does not appear that he can challenge the validity of his exceptional sentence without challenging the validity of the entire plea. We have recognized that plea agreements often

involve one bargain or a " 'package deal.' " *State v. Turley*, 149 Wn.2d 395, 400, 69 P.3d 338 (2003); *see also State v. Bisson*, 156 Wn.2d 507, 130 P.3d 820 (2006). Even where the plea agreement involves multiple counts or charges, the agreement is indivisible where the charges were made at the same time, described in one document, and accepted in a single proceeding. *Turley*, 149 Wn.2d at 400. Here, Ermels pleaded guilty to *a single charge* and agreed that there were both factual and legal bases for an exceptional sentence on that charge. CP at 31-32. He did so in exchange for the State's agreement not to file a more serious charge with a significantly longer standard range. In fact, Ermels' exceptional sentence fell below the low end of the standard range for the original crime charged. *Compare* RCW 9.94A.510, .515 (93 to 123 months) *with* CP at 62 (90 months). Ermels does not offer objective manifestation of any intent to treat the exceptional sentence as a divisible portion of the plea agreement. *Turley*, 149 Wn.2d at 400. His plea agreement is indivisible under *Turley*, and Ermels cannot claim that his stipulation to the factual and legal validity of an exceptional sentence is separable from the rest of his plea agreement. Ermels cannot challenge his stipulations without challenging the entire agreement.[6]

■ ¶21 *Waiver of the Right To Appeal*: The State argues that Ermels' waiver of his right to appeal "the basis for and propriety of the imposition of an exceptional sentence upward," CP at 32, precludes him from now challenging the knowing, intelligent, and voluntary character of his stipulation to the exceptional sentence. At the Court of Appeals, Ermels did not challenge his appeal waiver, a fact that the Court of Appeals found to be fatal. *Ermels*, 125 Wn. App. at 200. The Court of Appeals also concluded that Ermels' appeal waiver was an integral part of the plea agreement and he could not challenge its validity without seeking to withdraw the entire agreement. *Id.*

---

[6] Ermels has not challenged the validity of his entire plea. In fact, he has specifically argued that he need not do so. Pet'r's Suppl. Br. at 17-20.

¶22 In this court, Ermels claims that the appeal waiver suffers from the same infirmity as his stipulation; he argues that it was not knowing, intelligent, or voluntary because he did not realize that he was waiving his right to an appeal based on *Blakely*. Yet Ermels' new articulation of this argument addresses only half of the Court of Appeals' concerns. Ermels still fails to address the indivisibility problem. As the Court of Appeals noted, an integral part of Ermels' plea bargain was that he would not challenge any aspect of his sentence except for its length. *Id.* As a result, the State was assured that it would not have to expend resources defending the propriety of and basis for the exceptional sentence on appeal. *See* CP at 32. Ermels' appeal waiver is an indivisible portion of his plea agreement pursuant to the *Turley* factors discussed above. *See Turley*, 149 Wn.2d at 400. Thus, Ermels cannot challenge the appeal waiver without challenging the validity of the entire agreement. *See id.*[7]

## III

### Conclusion

¶23 We conclude that Ermels' exceptional sentence did not depend on improper *Blakely* fact finding and, therefore, this case only presents an issue as to whether Ermels' plea was knowing, intelligent, and voluntary. Because the portions of his plea agreement stipulating to the facts supporting the exceptional sentence and the legal basis for the exceptional sentence are indivisible from the rest of his plea agreement, he cannot challenge the exceptional sentence without challenging the entire plea. Likewise, Ermels can-

---

[7] For the first time in his supplemental brief, Ermels contends that his waiver of his right to appeal is ambiguous. We need not address issues raised for the first time in supplemental briefing. RAP 13.7(b). In addition, the State urges this court to adopt the reasoning set forth in *Brady*, 397 U.S. 742, and hold that an appeal waiver can be deemed knowing, intelligent, and voluntary despite the fact that the defendant's calculation in considering the plea agreement did not weigh a later favorable change in the law. However, because we hold that Ermels cannot challenge his stipulation or his appeal waiver without challenging his entire plea, we need not address this issue.

not challenge the validity of his appeal waiver without challenging his entire plea. Ermels has specifically stated that he has not challenged his entire plea, and we will not reframe his argument to do so. We affirm the Court of Appeals.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

[Nos. 74268-5; 74316-9. En Banc.]
Argued May 27, 2004. Decided March 16, 2006.