237 P.3d 299 (2010)
STATE of Washington, Respondent,
v.
Timothy C. REANIER, Appellant.
No. 63717-7-I.
Court of Appeals of Washington, Division 1.
August 2, 2010.
*300 Maureen Marie Cyr, Washington Appellate Project, Seattle, WA, for Appellant.
Deborah A. Dwyer, King Co. Pros. Ofc/Appellate Unit, Seattle, WA, for Respondent.
COX, J.
¶ 1 An accused may not lawfully agree to a term of commitment for treatment following acquittal by reason of insanity where the term exceeds that authorized by law.[1] Where an accused agrees to an unauthorized term of commitment, that agreement does not cure a facial defect in an order of commitment that shows, without further elaboration, that the court exceeded its statutory authority.[2] The remedy under such circumstances is correction of the unauthorized term of commitment.[3]
¶ 2 Here, the trial court ordered Timothy Reanier committed for treatment for a term of 10 years following his acquittal by reason of insanity on two charges of third degree assault. In doing so, the court accepted the joint recommendation of Reanier and the State that "an exceptional term of commitment" would be imposed. Specifically, the parties agreed that the maximum sentence *301 for two counts of third degree assault, each of which was five years, should apply and that Reanier's commitment would "run consecutively for a total term of 10 years."
¶ 3 At the time of Reanier's commission of the acts leading to these charges, the maximum sentence for a third degree assault charge, a Class C felony, was five years.[4] RCW 10.77.025 mandates that the maximum term of commitment for treatment following acquittal by reason of insanity cannot exceed the maximum possible penal sentence for any offense charged for which the person was acquitted. The statute is ambiguous whether a term of commitment may be based on consecutive maximum sentences for charges for which an accused is acquitted by reason of insanity. Moreover, the legislature has not changed the statute to show that this court's decision prohibiting such a term of confinement was incorrect during the 25 years since that decision. Accordingly, we conclude that the trial court exceeded its authority by ordering Reanier committed for a total term exceeding five years. We reverse.
¶ 4 In July 2004, the State charged Reanier with assault in the second degree, including a deadly weapon allegation. The charge arose from a confrontation between Reanier and two sheriff's deputies who responded to a call of a man wielding a knife in public. In its request for bail of $500,000, the State alleged that "it appears as though this charge represents [Reanier's] third strike." The certification for determination of probable cause states that when the deputies arrived, Reanier screamed at them to "shoot him." The certification also states that he rushed toward the deputies with a knife before they subdued him with a taser.
¶ 5 The trial court ordered that Reanier be committed for observation and examination, and that a competency hearing would follow. At the competency hearing, the court determined that Reanier was competent to stand trial and to enter a plea to charges.
¶ 6 Thereafter, the parties entered into a plea agreement to dispose of the case. In the agreement, the State agreed to amend the information to reduce the second degree assault charge to two counts of third degree assault. The parties agreed to jointly recommend to the court that it impose a term of commitment for treatment of Reanier. The parties further agreed that the total term would be based on consecutive maximum sentences for two counts of third degree assault "for a total term of 10 years."[5] In the same agreement, Reanier agreed that he would have faced a mandatory sentence of life imprisonment without the possibility of parole had he been convicted of the original charge of second degree assault. Accordingly, he also agreed that he received a substantial benefit by agreeing to a joint recommendation of a 10-year term of commitment rather than facing the risk of a mandatory sentence of life without the possibility of parole if convicted.
¶ 7 Pursuant to RCW 10.77.080, Reanier moved for acquittal on the ground of insanity at the time of his acts in confronting the two sheriff's deputies. On May 31, 2005, the trial court entered its order of acquittal by reason of insanity, an order of commitment, and supporting findings and conclusions. The court decided that Reanier understood and agreed that 10 years was a legal term of commitment under the facts of the case. The court also determined that he received a substantial benefit by the agreement and that he properly waived the right to challenge the term of commitment by appeal or collateral attack. The order of commitment imposes a "maximum term of commitment or treatment" of 10 years.[6] Reanier did not appeal these orders.
¶ 8 In April 2007, Reanier applied for conditional release from commitment for treatment at Western State Hospital. Following a hearing at which Reanier, his counsel, and counsel for the State were present, the trial court entered an order releasing Reanier from commitment, subject to detailed conditions. These conditions were based largely on the recommendations and medical evidence provided by Western State.
*302 ¶ 9 In April 2009, the State moved to revoke Reanier's conditional release due to his alleged violations of conditions imposed by the trial court's April 2007 order. Specifically, the State claimed that he failed to report to his community corrections officer and ingested cocaine. Reanier, through appointed counsel, opposed revocation.
¶ 10 Acknowledging that Reanier had agreed in May 2005, to consecutive five year terms of commitment, defense counsel nevertheless argued that the maximum term for any third degree assault was five years. According to defense counsel, the court no longer had "jurisdiction" to impose conditions or sanctions on Reanier after five years.
¶ 11 At the hearing on the motion, the State argued that RCW 10.77.025 supported the imposition of the 10-year commitment. In response, Reanier argued that the statute did not support the imposition of that term. On June 1, 2009, the court entered an order that, among other things, directed that Reanier return to Western State Hospital and remain there until such time as he entered treatment for chemical dependency. The same order denies the request "to limit jurisdiction of [the] court to supervise compliance with release conditions to 5 years total for both charges."[7]
¶ 12 Reanier appeals the June 1, 2009 order.

TIMELINESS OF APPEAL AND SCOPE OF REVIEW
¶ 13 The State raises threshold issues regarding the timeliness of Reanier's appeal and the scope of our review. Specifically, the State contends that his appeal is untimely because he did not appeal the order of commitment entered in May 2005. We disagree.
¶ 14 Superior Court Criminal Rule (CrR) 7.8(b)(4) provides for relief from void judgments. "A void judgment is one entered by a court `which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved.'"[8] A motion attacking a sentencing court's authority to sentence a criminal defendant in excess of the statutory maximum sentence is properly brought under CrR 7.8(b)(4).[9]
¶ 15 A party must move under CrR 7.8(b)(4) "within a reasonable time," subject to RCW 10.73.090, .100, .130, and .140.[10] RCW 10.73.090(1) provides,
No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.[11]
The term "valid on its face" has been interpreted to mean, "`without further elaboration.'"[12] "A judgment and sentence is invalid on its face if it exceeds the duration allowed by statute and the alleged defect is evident on the face of the document without further elaboration."[13]
¶ 16 Here, the State does not claim that Reanier failed to make his motion "within a reasonable time," as CrR 7.8(b)(5) requires. Thus, the question is whether RCW 10.73.090(1) bars relief in this case.
¶ 17 The State does not argue that the order of commitment is valid on its face, as the statute states. It is clear from examination of the order of commitment, without further elaboration, that the 10-year term of commitment that the trial court imposed in its May 2005 order exceeded the statutory maximum term for third degree assault, a *303 class C felony, which is five years.[14] Thus, Reanier is not barred from making a collateral attack on that order.
¶ 18 The State argues that Reanier's appeal is untimely because he did not appeal the May 2005 order of commitment within the 30-day period allowed for filing a notice of appeal under RAP 5.2(a). His failure to appeal the earlier order is not fatal to this appeal of the June 1, 2009, order designated in his notice of appeal.
¶ 19 The proper focus of RAP 5.2(a) in this case is the order the court entered on June 1, 2009. While Reanier did not characterize his opposition to revocation as a CrR 7.8 motion, it is clear from the arguments by the parties at the hearing that a focus of both sides was RCW 10.77.025. While they framed their arguments in terms of "jurisdiction," it is clear that the arguments centered on whether the court's authority to return Reanier to commitment could exceed five years. Thus, the timely appeal of the June 1, 2009, order brings up for review the trial court's most recent decision denying his request for release. Moreover, this is also a proper collateral attack on the May 2005 order of commitment under CrR 7.8(b)(4) to the extent that order is a void judgment.[15] Both orders are properly before us on review.
¶ 20 The State next argues that this appeal is untimely because Reanier's motion was untimely under CrR 7.4. That rule requires motions for arrest of judgment to be made within 10 days after the verdict or decision.[16] Specifically, the State claims that Reanier's motion was based on the court's alleged "lack of jurisdiction of the person or offense."[17]
¶ 21 Having examined the motion and the portions of the record before us, we conclude that the motion is properly characterized as one made under CrR 7.8, not CrR 7.4. Thus, the motion was not untimely.
¶ 22 Likewise, we reject the State's argument, based on In re Personal Restraint of Goodwin,[18] that Reanier must file a personal restraint petition to obtain relief. We see no reason, under the circumstances of this case, to bar consideration of his claim due to the manner in which he presents it.

MAXIMUM TERM OF COMMITMENT
¶ 23 Reanier argues that the trial court exceeded its statutory authority in imposing a 10-year term of commitment following his acquittal by reason of insanity on the third degree assault charges. We agree.
¶ 24 A criminal defendant acquitted by reason of insanity may be subject to ongoing supervision.[19] If the court finds that the defendant is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security, the court may order his or her hospitalization or any appropriate, less restrictive alternative treatment.[20] If the court finds the defendant presents no such danger but is in need of control by the court or other persons or institutions, the court will order his or her conditional release.[21]
¶ 25 The court's authority to order a term of commitment or treatment is limited by RCW 10.77.025(1), which provides,
Whenever any person has been: (a) Committed to a correctional facility or inpatient treatment under any provision of this chapter; or (b) ordered to undergo alternative treatment following his or her acquittal by reason of insanity of a crime charged, such commitment or treatment cannot exceed the maximum possible penal sentence for any offense charged for which the person was committed, or was acquitted by reason of insanity.[22]
*304 ¶ 26 The "maximum possible penal sentence" refers to the statutory maximum of the charged offense, not the top end of the standard range as defined by the Sentencing Reform Act (SRA).[23] Our courts have recognized that the purpose behind limiting confinement to the maximum penal term is to give effect to constitutional restrictions governing involuntary confinement.[24]
¶ 27 "The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent."[25] It is appropriate to resort to aids to construction, including legislative history, if a statute is ambiguous.[26] A statute is ambiguous if, after examining all that the legislature has said in that and related statutes, the statute remains susceptible to more than one reasonable meaning.[27] When legislative history fails to provide sufficient guidance, the rule of lenity "provides that a statutory ambiguity in a criminal case should be resolved in favor of the defendant."[28] Additionally, the legislature "'is presumed to be aware of judicial interpretation of its enactments,' and where statutory language remains unchanged after a court decision the court will not overrule clear precedent interpreting the same statutory language."[29] The meaning of a statute is a question of law reviewed de novo.[30]
¶ 28 In State v. Harris,[31] this court addressed the interpretation of language substantially similar to that which now appears in RCW 10.77.025(1).[32] There, Harris was acquitted by reason of insanity of one count of second degree possession of stolen property and one count of forgery.[33] Each charge was a class C felony and carried a maximum possible sentence of five years.[34] The trial court entered an order of acquittal by reason of insanity on June 12, 1978, and also an order conditionally releasing Harris to treatment.[35] This court's opinion does not state exactly what term of commitment the order imposed. But it is clear that the term *305 exceeded five years, the maximum possible sentence for either of the charges.
¶ 29 In May 1983, nearly five years after the trial court's initial order committing Harris to treatment, he filed a petition for final discharge.[36] The trial court denied the petition, and Harris timely appealed.[37] He argued that he was entitled to final discharge under former RCW 10.77.020(3) (1974), which provided
"Whenever any person has been committed under any provision of this chapter, or ordered to undergo alternative treatment following his acquittal of a crime charged by reason of insanity, such commitment or treatment cannot exceed the maximum possible penal sentence for any offense charged for which he was acquitted by reason of insanity."[38]
¶ 30 Harris reasoned that the plain language of the statute"maximum possible penal sentence for any offense charged"limited his term to five years.[39] He based his argument on the portion of the statute that states that the statutory maximum was for "any offense," because the word "offense" is singular.[40] The court rejected that argument, noting that Washington courts have "repeatedly construed the word `any' to mean `every' and `all.'"[41] Thus, the court was "unpersuaded that the statutory language itself resolve[d] the issue."[42]
¶ 31 The court next considered legislative history that the State argued clarified the legislature's intent regarding the statute. In doing so, the court concluded that the statute was enacted in response to a United States Supreme Court case that held that a defendant found incompetent to stand trial could not be committed indefinitely without a finding of dangerousness.[43] But the court concluded that the most that could be said about the statute was that the legislature sought to tie the commitment period in some way to the maximum penal sentence.[44] In sum, the court concluded that legislative history did not show that the legislature "even considered the situation in which two or more offenses were charged."[45]
¶ 32 Because neither the wording of the statute nor its legislative history provided sufficient guidance of legislative intent, the court relied upon the only other rule applicable under the circumstances: the rule of lenity.[46] Under that rule, a statutory ambiguity in a criminal case should be resolved in favor of the accused.[47] Despite the court's reluctance to rely on this rule of statutory construction, it was compelled to reverse because of the ambiguity and the lack of relevant legislative history.[48] The court noted "that if the Legislature intended to allow a maximum period of commitment based on consecutive sentences, it could have so provided in the statute."[49] The supreme court denied review of the case.[50]
¶ 33 Little has changed in the 25 years since the court decided Harris. The language of the statute that is before us now is *306 not materially different from the language the court construed in that case. Significantly, the legislature has done nothing to change the statute in ways relevant to the language at issue here. We have no reason to conclude that the legislature, which has been presumably aware of Harris for the last 25 years, disagrees with its holding. Accordingly, the five year maximum sentence for third degree assault is the statutory maximum for Reanier's commitment.
¶ 34 The State argues that Harris should not bind this court. It first argues, contrary to the conclusion of the court in that case, that the statute is not ambiguous. According to the State, substitution of either the word "every" or "all" for the word "any" in the phrase "maximum possible penal sentence for any offense charged" could support the consecutive maximum terms imposed here. In making this argument, the State draws on this court's statement in Harris that courts have repeatedly construed "all" to mean both of these other two words. Although we question whether the substitution of either of these words for the word "any" in the statute necessarily resolves any ambiguity in favor of permitting terms of commitment based on consecutive sentences, the State's argument is better directed to the legislature.
¶ 35 The State also argues that even if the statute is ambiguous, "the intent of the legislature is clearer now than it was under the sentencing scheme in effect" when the court decided Harris.[51] Again, this is an argument better directed to the legislature. The role of this court is to determine legislative intent. Because the legislature has not modified the key portion of the statute in the 25 years since Harris, we conclude there is no reason to depart from the holding of that court.
¶ 36 The State finally argues that Reanier's case is distinguishable from that in Harris because "it appears that the court in Harris was dealing with a hypothetical term of commitment." Here, Reanier expressly "agreed to, and received, consecutive terms for his two crimes."[52]
¶ 37 First, we note from the opinion in Harris that it was the State who argued that the statute allowed commitment for a period equal to that which would have been served had consecutive sentences been imposed, or 10 years.[53] Although the opinion does not expressly state what term of commitment was imposed, it is clear from the recital of facts and procedural history that Harris filed a petition for final discharge nearly five years after the trial court entered its order conditionally releasing him to treatment.[54] On appeal, the focus of the court was on whether Harris was entitled under former RCW 10.77.020(3) to final discharge after five years of commitment.[55] When the court reversed in January 1985, the remand included the directive that Harris be granted final discharge.[56] In short, the case did not involve hypothetical facts. The term of commitment exceeded the five-year maximum sentence for either of the two charged offenses.
¶ 38 Second, and more importantly, this argument, as well, is better directed to the legislature. It can decide whether it intends an interpretation of the statute different than the one stated in Harris.
¶ 39 The trial court exceeded its statutory authority when it imposed a 10-year term of commitment under the circumstances of this case.

REMEDY
¶ 40 The State argues, in the alternative, that Reanier's plea is indivisible and he cannot request relief from his sentence without also challenging his plea agreement. We disagree.
¶ 41 To the extent that the State argues that Reanier's agreement to serve consecutive *307 terms constitutes waiver, it is incorrect. Though direct appeal and collateral attack are not always available for defendants who have entered into plea agreements, our supreme court's decision in In re Personal Restraint of West[57] is instructive. There, the State charged West with one count of first degree robbery, for which West faced life without the possibility of parole as a persistent offender.[58] West entered into a plea agreement in which the State agreed to reduce the charge to theft in the first degree. In exchange, West agreed to plead guilty, stipulate to an exceptional sentence of 10 years, and waive any right to earned early release time.[59] The trial court sentenced West to 10 years, the statutory maximum, and indicated on the judgment and sentence, "defendant stipulates to flat timeno earned early release."[60]
¶ 42 On appeal, the supreme court concluded the doctrine of waiver does not apply where the alleged sentencing error is a legal, rather than factual, error leading to an excessive sentence.[61] "The fact that a defendant agreed to a particular sentence does not cure a facial defect in the judgment and sentence where the sentencing court acted outside its authority."[62]
¶ 43 The court also concluded that the statute governing earned early release time provided no authority to the trial court to restrict such time.[63] Accordingly, the trial court's sentence was not authorized by statute and was "a fundamental defect," which justified collateral relief.[64]
¶ 44 The court rejected the State's arguments that West had waived any right to earned early release time as part of her plea agreement and that she invited any error.[65] In considering the proper remedy, the court stated, "This court has been clear that `the imposition of an unauthorized sentence does not require vacation of the entire judgment or granting of a new trial. The error is grounds for reversing only the erroneous portion of the sentence imposed.'"[66] The court remanded for correction of the invalid judgment and sentence in the form of deletion of the earned early release time provision.[67]
¶ 45 In West, the supreme court relied in part on its earlier conclusion in In re Personal Restraint of Goodwin.[68] There, petitioner Goodwin argued that his juvenile convictions should have "washed out" under the SRA and were improperly included in his offender score.[69] The court agreed that Goodwin's offender score "was miscalculated," and that his offender score was, "as a matter of law in excess of what is statutorily permitted for his crimes given a correct offender score."[70] As to remedy, the court acknowledged that it had previously "granted relief to personal restraint petitioners in the form of resentencing within statutory authority where a sentence in excess of that authority had been imposed, without regard to the plea agreements involved."[71] The court specifically rejected the State's argument that the court should leave the parties as it found them, since "the usual remedy is the defendant's withdrawal of his guilty plea, leaving the State free to reinstate the original *308 charges," but the statute of limitations had run in Goodwin's case.[72] The court stated, "Our focus is not the voluntariness of the plea agreement, nor are we engaging in a balancing process, weighing the harm to the State versus the harm to the personal restraint petitioner."[73] The court concluded, "Correcting an erroneous sentence in excess of statutory authority does not affect the finality of that portion of the judgment and sentence that was correct and valid when imposed."[74] The court granted Goodwin's personal restraint petition, vacated his sentence, and remanded his case for resentencing using the correct offender score.[75]
¶ 46 These cases support remand and final discharge because Reanier has served the maximum term of commitment authorized by the legislature. In this case, that maximum is five years.
¶ 47 The State misplaces its reliance on State v. Ermels[76] to argue that the appropriate remedy is for Reanier to withdraw his plea. In Ermels, the defendant stipulated to both a factual and legal basis for an exceptional sentence as part of his plea agreement to a charge of second degree manslaughter.[77] He also waived his right to appeal the basis for and propriety of an exceptional sentence.[78] On appeal, he argued that he did not knowingly waive his right to have a jury determine the facts supporting his exceptional sentence beyond a reasonable doubt under Blakely v. Washington,[79] which had been decided by the United States Supreme Court while Ermels' appeal was pending with the Washington Court of Appeals.[80] Ermels asked the court to remand for imposition of a sentence within the standard sentencing range.[81] The court concluded, "Ermels' limited request for remedy is fatal because it does not appear that he can challenge the validity of his exceptional sentence without challenging the validity of the entire plea."[82]
¶ 48 A key distinguishing feature between this case and Ermels is that the exceptional sentence in Ermels was authorized by statute.[83] Here, the term of commitment is not authorized by statute. Ermels does not control this situation.
¶ 49 The State also relies on State v. Miller[84] and State v. Walsh[85] to argue that the remedies available to Reanier are either specific performance or withdrawal of the plea. We disagree on the basis that those cases are distinguishable.
¶ 50 In Miller, the prosecutor inadvertently told the defendant that he could receive a sentence of less than 20 years for a first degree murder conviction.[86] After Miller pled guilty, he learned that a statute mandated at least a 20-year sentence.[87] He tried to withdraw his guilty plea, but the trial court denied his motion.[88] Since it was undisputed that Miller did not understand the consequences of pleading guilty, the supreme court held that Miller could withdraw his plea or *309 have the plea agreement specifically enforced.[89]
¶ 51 In Walsh, the defendant established that his guilty plea was involuntary based upon a mutual mistake about the standard range sentence.[90] Both the defense and the prosecution understood at the time of entering into a plea agreement that the standard sentencing range was 86 to 114 months, when the actual range was 95 to 125 months.[91] The court held that Walsh was entitled to withdraw his guilty plea because his plea was not voluntary.[92]
¶ 52 In Miller and Walsh, the defendants sought to withdraw guilty pleas that were either unknowing or involuntary due to misinformation.[93] In both cases, the misinformation upon which the plea agreements relied was in favor of the defendant. Both were misinformed that a shorter term of confinement was available than actually was.[94]
¶ 53 Here, Reanier does not seek to withdraw his guilty plea to reduced charges of third degree assault. And he does not argue that he entered into his plea either unknowingly or involuntarily. Moreover, the "remedy" of specific performance is no remedy at all for Reanier. Neither case controls here.
¶ 54 As of the date of filling of this opinion, it is clear that Reanier has served more than five years, the maximum sentence for third degree assault, for which he was acquitted by reason of insanity. He is entitled to discharge because the statute does not authorize confining him any longer.
¶ 55 We reverse and remand for entry of an order directing final discharge.
WE CONCUR: SPEARMAN, J., and LEACH, A.C.J.
NOTES
[1] See In re Pers. Restraint of West, 154 Wash.2d 204, 213-14, 110 P.3d 1122 (2005) ("`[A]n individual cannot, by way of a negotiated plea agreement, agree to a sentence in excess of that allowed by law.'") (quoting In re Pers. Restraint of Hinton, 152 Wash.2d 853, 861, 100 P.3d 801 (2004)) (citing In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 870, 50 P.3d 618 (2002); In re Pers. Restraint of Thompson, 141 Wash.2d 712, 723, 10 P.3d 380 (2000)); State v. Harris, 39 Wash.App. 460, 462-65, 693 P.2d 750, review denied, 103 Wash.2d 1030 (1985).
[2] See West, 154 Wash.2d at 211, 214, 110 P.3d 1122.
[3] See id. at 215, 110 P.3d 1122.
[4] RCW 9A.36.031(2); RCW 9A.20.021(1)(c).
[5] Clerk's Papers at 33.
[6] Clerk's Papers at 31-32.
[7] Clerk's Papers at 96-97.
[8] State v. Zavala-Reynoso, 127 Wash.App. 119, 122, 110 P.3d 827 (2005) (emphasis added) (quoting Dike v. Dike, 75 Wash.2d 1, 7, 448 P.2d 490 (1968)).
[9] Id. at 123, 110 P.3d 827.
[10] CrR 7.8(b).
[11] (Emphasis added.)
[12] Zavala-Reynoso, 127 Wash.App. at 124, 110 P.3d 827 (internal quotation marks omitted) (quoting In re Pers. Restraint of Stoudmire, 141 Wash.2d 342, 353, 5 P.3d 1240 (2000)); see also Goodwin, 146 Wash.2d at 866, 50 P.3d 618.
[13] West, 154 Wash.2d at 211, 110 P.3d 1122.
[14] RCW 10.77.025(1); RCW 9A.20.021(1)(c).
[15] See RCW 10.73.090(2) ("Collateral attack" includes a motion to vacate judgment).
[16] CrR 7.4(b).
[17] Brief of Respondent at 11.
[18] 146 Wash.2d 861, 50 P.3d 618 (2002).
[19] See RCW 10.77.110.
[20] RCW 10.77.110(1).
[21] RCW 10.77.110(3).
[22] (Emphasis added.)
[23] State v. Sunich, 76 Wash.App. 202, 206, 884 P.2d 1 (1994).
[24] Harris, 39 Wash.App. at 463-64, 693 P.2d 750 (citing Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972)); In re Pers. Restraint of Kolocotronis, 99 Wash.2d 147, 152-53, 660 P.2d 731 (1983). Both Harris and Kolocotronis discuss former RCW 10.77.020(3) (1974), amended by Laws of 1998, ch. 297, § 30. The same session law moved substantially similar language to a new section, RCW 10.77.025. Laws of 1998, ch. 297, § 31.
[25] Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002).
[26] Id. at 12, 43 P.3d 4.
[27] Id. at 11-12, 43 P.3d 4.
[28] Harris, 39 Wash.App. at 464-65, 693 P.2d 750 (citing State ex rel. McDonald v. Whatcom County Dist. Court, 92 Wash.2d 35, 37-38, 593 P.2d 546 (1979)).
[29] Riehl v. Foodmaker, Inc., 152 Wash.2d 138, 147, 94 P.3d 930 (2004) (quoting Friends of Snoqualmie Valley v. King County Boundary Review Bd., 118 Wash.2d 488, 496-97, 825 P.2d 300 (1992)).
[30] Campbell & Gwinn, 146 Wash.2d at 9, 43 P.3d 4.
[31] 39 Wash.App. 460, 693 P.2d 750, review denied, 103 Wash.2d 1030 (1985).
[32] Id. at 462, 693 P.2d 750. Former RCW 10.77.020(3) (1974) provided,

Whenever any person has been committed under any provision of this chapter, or ordered to undergo alternative treatment following his acquittal of a crime charged by reason of insanity, such commitment or treatment cannot exceed the maximum possible penal sentence for any offense charged for which he was acquitted by reason of insanity....
In 1998, the legislature deleted the provision at issue in Harris and inserted the language into a newly enacted statute, RCW 10.77.025. Laws of 1998, ch. 297, §§ 30, 31. RCW 10.77.025(1) provides,
Whenever any person has been: (a) Committed to a correctional facility or inpatient treatment under any provision of this chapter; or (b) ordered to undergo alternative treatment following his or her acquittal by reason of insanity of a crime charged, such commitment or treatment cannot exceed the maximum possible penal sentence for any offense charged for which the person was committed, or was acquitted by reason of insanity.
[33] Id. at 462, 693 P.2d 750.
[34] Id. at 462-63, 693 P.2d 750.
[35] Id. at 462, 693 P.2d 750.
[36] Id.
[37] Id.
[38] Id. (quoting former RCW 10.77.020(3)).
[39] Id. at 462-63, 693 P.2d 750 (emphasis added) (quoting former RCW 10.77.020(3)).
[40] Id. at 463, 693 P.2d 750.
[41] Id. (citing State ex rel. Evans v. Brotherhood of Friends, 41 Wash.2d 133, 247 P.2d 787 (1952); S.L. Rowland Constr. Co. v. Beall Pipe and Tank Corp., 14 Wash.App. 297, 306-07, 540 P.2d 912 (1975)).
[42] Id.; see also State v. Westling, 145 Wash.2d 607, 611, 40 P.3d 669 (2002) ("`Any' means `every' and `all.'" (citing State v. Smith, 117 Wash.2d 263, 271, 814 P.2d 652 (1991))).
[43] Id. at 463-64, 693 P.2d 750 (citing Jackson, 406 U.S. 715, 92 S.Ct. 1845).
[44] Id. at 464, 693 P.2d 750.
[45] Id.
[46] Id. at 464-65, 693 P.2d 750.
[47] Id. at 465, 693 P.2d 750.
[48] Id.
[49] Id. at 465 n. 2, 693 P.2d 750. (citing People v. Hampton, 121 Ill.App.3d 273, 76 Ill.Dec. 850, 459 N.E.2d 985 (1983); People v. Smith, 160 Cal.App.3d 1100, 207 Cal.Rptr. 134 (1984)).
[50] State v. Harris, 103 Wash.2d 1030, 1985 WL 321051 (1985).
[51] Brief of Respondent at 16.
[52] Id. at 17-18.
[53] Harris, 39 Wash.App. at 463, 693 P.2d 750.
[54] Harris, 39 Wash.App. at 462, 693 P.2d 750. The trial court's orders were entered on June 12, 1978. Harris filed a petition for final discharge on May 20, 1983. The decision does not state the date of the hearing for Harris' petition.
[55] Id. at 462-65, 693 P.2d 750.
[56] Id. at 465, 693 P.2d 750.
[57] 154 Wash.2d 204, 110 P.3d 1122 (2005).
[58] Id. at 207, 110 P.3d 1122.
[59] Id.
[60] Id. at 208, 110 P.3d 1122.
[61] Id. at 213, 110 P.3d 1122 (citing Goodwin, 146 Wash.2d at 874, 50 P.3d 618).
[62] Id. at 214, 110 P.3d 1122.
[63] Id. at 212-13, 110 P.3d 1122.
[64] Id. at 213, 110 P.3d 1122.
[65] Id. at 213-14, 110 P.3d 1122.
[66] Id. at 215, 110 P.3d 1122 (quoting State v. Eilts, 94 Wash.2d 489, 496, 617 P.2d 993 (1980)).
[67] Id.
[68] 146 Wash.2d 861, 50 P.3d 618 (2002).
[69] Id. at 864-65, 50 P.3d 618.
[70] Id. at 875-76, 50 P.3d 618.
[71] Id. at 877, 50 P.3d 618 (citing In re Pers. Restraint of Gardner, 94 Wash.2d 504, 617 P.2d 1001 (1980); In re Pers. Restraint of Moore, 116 Wash.2d 30, 803 P.2d 300 (1991)).
[72] Id. at 876, 50 P.3d 618.
[73] Id. (footnote omitted).
[74] Id. (citing In re Pers. Restraint of Carle, 93 Wash.2d 31, 34, 604 P.2d 1293 (1980)).
[75] Id. at 877-78, 50 P.3d 618.
[76] 156 Wash.2d 528, 131 P.3d 299 (2006).
[77] Id. at 531, 533-34, 131 P.3d 299.
[78] Id.
[79] 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[80] Ermels, 156 Wash.2d at 531, 538-39, 131 P.3d 299.
[81] Id. at 540, 131 P.3d 299.
[82] Id. at 540, 131 P.3d 299.
[83] Id. at 535-36, 131 P.3d 299 (The court noted its previous holding "that a stipulation to an exceptional sentence is enough, in and of itself, to constitute a substantial and compelling reason to justify an exceptional sentence, so long as the sentence is authorized by statute and the findings also show that the sentence is consistent with the goals of the [SRA]." (emphasis added) (citing In re Pers. Restraint of Breedlove, 138 Wash.2d 298, 300, 979 P.2d 417 (1999))).
[84] 110 Wash.2d 528, 756 P.2d 122 (1988).
[85] 143 Wash.2d 1, 17 P.3d 591 (2001).
[86] Miller, 110 Wash.2d at 529, 756 P.2d 122.
[87] Id.
[88] Id.
[89] Id. at 536-37, 756 P.2d 122.
[90] Walsh, 143 Wash.2d at 8, 17 P.3d 591.
[91] Id. at 4, 17 P.3d 591.
[92] Id. at 9-10, 17 P.3d 591.
[93] Miller, 110 Wash.2d at 536-37, 756 P.2d 122; Walsh, 143 Wash.2d at 8, 17 P.3d 591.
[94] Miller, 110 Wash.2d at 529, 756 P.2d 122; Walsh, 143 Wash.2d at 4, 17 P.3d 591.